695 So.2d 687 (1997)
Bobby STEVERSON, Appellant,
v.
STATE of Florida, Appellee.
No. 86590.
Supreme Court of Florida.
June 12, 1997.
James Marion Moorman, Public Defender and Jennifer Y. Fogle, Assistant Public Defender, Tenth Judicial Circuit, Bartow, for Appellant.
Robert A. Butterworth, Attorney General; and Candance M. Sabella and Carol M. Dittmar, Assistant Attorneys General, Tampa, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon appellant, Bobby Steverson. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. In May, 1995, Steverson was tried and convicted by a jury for the first-degree murder of Bobby Lucas, armed burglary with assault of Mr. Lucas, and armed robbery for the taking of a television and VCR from Mr. Lucas's trailer. We find that Steverson was unfairly prejudiced by the trial court's error in allowing the State to present excessive evidence of a collateral crime involving the shooting of a police officer such that the other crime became the feature of this capital murder trial. Consequently, we must reverse Steverson's conviction and sentence and remand for a new trial where the jury's attention is properly focused on the actual charges at issue in this case.

APPEAL
Steverson raises five issues on appeal: (1) whether the trial court erred in denying Steverson's motion for a new trial where juror misconduct violated his constitutional *688 right to a fair and impartial jury;[1] (2) whether the trial court erred in admitting extensive evidence of a collateral crime such that its probative value was substantially outweighed by its unfairly prejudicial effect; (3) whether Steverson's death sentence is disproportionate; (4) whether the trial court erred in failing to conduct an adequate inquiry of jurors as to their exposure, just before penalty phase deliberations, to news articles relating Steverson's alleged post-guilt-phase confession to a corrections officer; and (5) whether section 921.141(5)(d), Florida Statutes (1995), Florida's felony murder aggravator, and the corresponding jury instruction, are unconstitutional.

UNFAIRLY PREJUDICIAL COLLATERAL CRIME EVIDENCE
Steverson contends that he is entitled to a new trial based on the trial court's failure, over repeated objections, to limit or exclude the extensive evidence presented by the State about the collateral offense of Police Detective Brian Rall's shooting four days after the murder of Mr. Lucas.[2] Specifically, Steverson maintains that the Lucas trial became nothing more than a forum in which the State retried Steverson for the police officer shootingalthough he already had been tried and convicted for that offenseand the unfairly prejudicial effect of this evidence on the jury far outweighed any relevancy or probative value it may have had in proving Steverson's guilt for the Lucas killing.
Section 90.403, Florida Statutes (1995), states in pertinent part:
Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.
In State v. McClain, 525 So.2d 420, 422 (Fla.1988), we explained the balancing test a trial court must perform under section 90.403 in determining whether relevant evidence also is admissible against a defendant at trial. We stated:
This statute compels the trial court to weigh the danger of unfair prejudice against the probative value. In applying the balancing test, the trial court necessarily exercises its discretion. Indeed, the same item of evidence may be admissible in one case and not in another, depending upon the relation of that item to the other evidence. E. Cleary, McCormick on Evidence, § 185 (3d ed. 1984).
Professor Ehrhardt explains the application of the statute as follows:
Although Section 90.403 is mandatory in its exclusion of this evidence, a large measure of discretion rests in the trial judge to determine whether the probative value of the evidence is substantially outweighed by any of the enumerated reasons. The court must weigh the proffered evidence against the other facts in the record and balance it against the strength of the reason for exclusion.
In excluding certain relevant evidence, Section 90.403 recognizes Florida law. Certainly, most evidence that is admitted will be prejudicial to the party against whom it is offered. Section 90.403 does not bar this evidence; it is directed at evidence which inflames the *689 jury or appeals improperly to the jury's emotions. Only when that unfair prejudice substantially outweighs the probative value of the evidence is the evidence excluded.
....
... In weighing the probative value against the unfair prejudice, it is proper for the court to consider the need for the evidence; the tendency of the evidence to suggest an improper basis to the jury for resolving the matter, e.g., an emotional basis; the chain of inference necessary to establish the material fact; and the effectiveness of a limiting instruction.
1 C. Ehrhardt, Florida Evidence § 403.1 at 100-03 (2d ed. 1984) (footnotes omitted).
The proper application of this balancing test was central to our later decision in Henry v. State, 574 So.2d 73 (Fla.1991), where we reversed the defendant's conviction for the first-degree murder of his wife and remanded the case for a new trial because of the erroneous admission of excessive testimony concerning the defendant's murder of his wife's son. Although recognizing that the evidence was relevant to the case as being part of a prolonged criminal episode, we explained that it nevertheless was inadmissible:
Some reference to the boy's killing may have been necessary to place the events in context, to describe adequately the investigation leading up to Henry's arrest and subsequent statements, and to account for the boy's absence as a witness. However, it was totally unnecessary to admit the abundant testimony concerning the search for the boy's body, the details from the confession with respect to how he was killed, and the medical examiner's photograph of the body. Even if the state had been able to show some relevance, this evidence should have been excluded because the danger of unfair prejudice substantially outweighed its probative value. § 90.403, Fla. Stat. (1985). Indeed, it is likely that the photograph alone was so inflammatory that it could have unfairly prejudiced the jury against Henry.
Id. at 75. See also Long v. State, 610 So.2d 1276, 1280-1281 (Fla.1992) (although evidence connected with defendant's arrest in collateral crime was admissible to establish identity and connect him to victim of charged offense, details of collateral crime were not admissible). Even when evidence of a collateral crime is properly admissible in a case, we have cautioned that "the prosecution should not go too far in introducing evidence of other crimes. The state should not be allowed to go so far as to make the collateral crime a feature instead of an incident." Randolph v. State, 463 So.2d 186, 189 (Fla. 1984).
In this case, the record reflects that Steverson visited Bobby Lucas on March 2, 1994, arriving at Lucas's trailer between 10 and 11 p.m. The two drank alcohol and smoked crack cocaine together. Steverson testified that Mr. Lucas was alive when he left the trailer that evening between 11:30 and midnight. The following morning, Thursday, March 3, two of Mr. Lucas's friends discovered his dead body in his trailer in west Lakeland.[3] In the course of investigating Mr. Lucas's death, police were on the lookout for a blue compact car after several acquaintances of both Lucas and Steverson told police they had seen a blue Honda resembling Steverson's CRX parked outside Lucas's trailer the night before he was murdered. Four days later on March 7, Detective Rall and his partner, who were in plain clothes and driving an unmarked car, investigated a tip from an informant that a blue Honda was parked outside of another known drug house in the area. Shortly after he approached the vehicle, which was occupied by Steverson, whom Detective Rall recognized, an exchange of gunfire occurred between them. Both men were shot and sustained injuries. Steverson was tried for the shooting of Detective Rall prior to the trial for Lucas's *690 murder and convicted of attempted first-degree murder of a law enforcement officer in that case. On appeal, the attempted firstdegree murder conviction was reversed and remanded, with directions to the trial court to reduce the conviction to attempted seconddegree murder. Steverson v. State, 677 So.2d 398 (Fla. 2d DCA 1996).
In this trial for Lucas's murder, the State sought to admit against Steverson extensive evidence of the shooting of Detective Rall. Defense counsel filed a motion in limine to exclude or limit the collateral crime evidence in response to the State's notice of intent to rely on "Williams rule" evidence.[4] At a hearing on the matter, the State recognized the evidence was not admissible as Williamsrule evidence and also acknowledged that it was not asking the court to give a flight instruction based on this evidence which it conceded would be improper. However, the State asserted that evidence of the police officer's shooting was admissible because it was inextricably intertwined with the testimony of other State witnesses; and the collateral crime showed a consciousness of guilt. Without explanation, the court denied defense counsel's motion, as well as counsel's subsequent efforts at trial to limit or exclude consideration of the extensive evidence presented by the State on the police officer's shooting.
At trial, then, the jury heard virtually every detail of the Rall case, including every emotional aspect of the shooting, the detective's injuries, his bloodied face, his staggering, his yelling, the frantic "officer down" response by numerous law enforcement officers and undercover agents, the hospital treatment, and the time he had to take off work due to the "deadly force" situation. In addition to a lengthy recitation about the shooting, Detective Rall personally and graphically described his injuries; and twelve photographs of his injuries were admitted over objection for review by the jurors. Detective Rall went on to narrate how blood dripped over his eyeglasses and face, how he awaited help, staggered down the street and yelled into his radio. He described his medical treatment at the hospital and the birdshot that remained in his body. Detective Primeau, Rall's partner, then gave his own "blow-by-blow" recounting of the details surrounding the shooting; and further testified about Rall's conditionhow he saw his partner down on the sidewalk, startled, bloody, and yelling. In addition, two other officers who arrived at the scene shortly after the shooting, but did not witness it, also reiterated for the jury in great detail the nature of Detective Rall's injuries, and how police and emergency personnel aided him at the scene.
While Steverson does not dispute that the fact of the Rall shooting may have some limited relevancy and perhaps have been admissible to explain Steverson's apprehension, he contends, and we agree, that there was no justification for the admission of extensive details of this event offered by four different witnesses, all of whom focused most of their testimony on the police officer's injuries and recovery.[5] Steverson contends that this testimony simply had no place in his trial for the murder of Bobby Lucas, and this evidence served only to confuse the jurydistracting them from the case at handand essentially retry Steverson for the shooting of a police officer rather than focusing the jury's attention on this case. Just as we concluded in Henry, we conclude here that it is likely that the twelve photographs of Rall's injuries alone were so unnecessary and inflammatory that they could have unfairly prejudiced the jury against Steverson. See Henry v. State, 574 So.2d at 75. Further, as in Henry, while "some reference" to the police officer's shooting would have been permissible, there is absolutely no justification for admitting the extensive evidence received here. Moreover, we certainly cannot say that the error in admitting this unfairly prejudicial evidence of the shooting of a police officer was harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
*691 Accordingly, we reverse Steverson's convictions and sentence and remand this case for a new trial in which the evidence of this collateral crime is appropriately limited if it is sought to be admitted again.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING and ANSTEAD, JJ., concur.
WELLS, J., concurs in result only.
NOTES
[1] This claim is founded upon information provided by one of the jurors in this case who called the trial judge's office and expressed concerns that another juror, Robert Mathis, was guilty of misconduct. Apparently, Mr. Mathis told the other jurors that his uncle was clubbed to death and the assailant did not get a death sentence, but was given a lengthy prison sentence. However, the assailant got out of prison in no time and went on to kill three more people. Mathis cautioned the other jurors that if Steverson was not given the death penalty, he would get out of prison soon and kill again. The appellant claims that none of this information was divulged by Mr. Mathis during his voir dire examination by lawyers for the State and defense. This issue and the other claims of error are mooted by our ruling on the trial court's improper admission of excessive evidence of the collateral crime of the shooting of a police officer.
[2] Steverson was tried and convicted for the attempted first-degree murder of a law enforcement officer before the instant case went to trial. The State elected to prosecute Steverson for this later offense first so that any conviction for the Rall shooting then could be used to aggravate any sentence Steverson might receive pursuant to a subsequent conviction for the Lucas murder.
[3] None of the fingerprints or other physical evidence collected from the crime scene and Steverson's car, including DNA testing, connected Steverson to the crime. Instead, the State principally relied on the testimony of four witnesses who stated that Steverson had made statements to them after Lucas's body was found which indicated that he may have killed someone and needed to avoid police and leave town.
[4] See Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959); § 90.404(2)(a), Fla. Stat. (1993).
[5] Cf. Williamson v. State, 681 So.2d 688 (Fla. 1996).