CAMPBELL, MONTEREY, (Senior) Judge.
Appellant, Bobby L. Steverson, challenges his convictions and sentence for first-degree murder, armed burglary with an assault, and armed robbery. We affirm his convictions and sentence for first-degree murder and armed robbery, and reverse his conviction and sentence for armed burglary with an assault.
In 1994, Steverson was indicted for the first-degree premeditated murder and armed robbery of Bobby Lucas, and armed burglary with an assault. The State proceeded to trial on the murder charge based on the dual theories of premeditated murder and felony murder. In 1995, a jury found Steverson guilty of each of the offenses as charged and Steverson received a sentence of death. The Florida supreme court in Steverson v. State, 695 So.2d 687 (Fla.1997), reversed Steverson’s convictions and sentence and ordered a new trial on the basis that the trial court erred in allowing the State to present excessive evidence of a collateral crime, i.e., Stever-son’s shooting of Detective Brian Rail (an issue Steverson again raises in this appeal). As a result of Steversoris retrial as ordered by our supreme court, Steverson was again found guilty of each charge and the jury again recommended a death sentence. On proportionality grounds, however, the trial judge imposed concurrent life sentences. On his appeal to this court of his three convictions and sentences, Stev-erson raises the following issues:
1. Whether Steverson’s conviction for first-degree murder must be reversed on the basis of Mackerley v. State, 777 So.2d 969 (Fla.2001), and Delgado v. State, 776 So.2d 233 (Fla.2000).
2. Whether the trial court again erred in allowing excessive testimony regarding the shooting of Detective Rail.
3.Whether the trial court erred in denying Steversoris motion to suppress his admissions against interest made to a detention deputy sheriff in a temporary holding cell immediately following Stev-erson’s convictions in his first trial.
We find Steversoris first issue relating to his conviction for first-degree murder to be without merit because Mack-erley and Delgado are inapplicable. Both of those cases hold that where a defendant is convicted (as was Steverson) by a general verdict for first-degree murder on dual theories of premeditation and felony murder, the conviction must be reversed regardless of the sufficiency of the evidence of premeditation where the felony murder charge is legally, as opposed to factually, unsupported.
In Delgado, the court construed the burglary statute, section 810.02(1), Florida Statutes (1989), and held that a burglary based on the “remaining in a structure” provision was limited to factual situations where the defendant enters a structure lawfully and subsequently secretes himself or herself from the host. 776 So.2d at 240. Under that limitation, Steverson’s burglary conviction rested upon a legally inadequate theory. Nevertheless, Steversoris first-degree murder conviction is valid. In bringing a charge of first-degree murder, the State does not have to charge felony murder separately in the indictment but may prosecute the charge of first-degree murder under alternative theories of premeditated and felony murder when the indictment charges premeditated murder. Kearse v. State, 662 So.2d 677, 682 (Fla.1995); O’Callaghan v. State, 429 So.2d 691, 695 (Fla.1983). A general verdict of guilt of first-degree murder arising from an alternative theory of premeditation or felony murder is valid where there is evidentiary support for one theory and the alternative theory is not *168 legally inadequate. San Martin v. State, 717 So.2d 462, 469-70 (Fla.1998). On the other hand, such a general verdict must be set aside where one theory lacks evidentia-ry support and the alternative theory is legally inadequate, or where it is impossible to determine which alternative was relied upon where there is evidentiary support for one theory but the other is legally inadequate. Mr. Steverson was charged with first-degree murder on the dual theories of premeditated murder and felony murder. The State relied on both armed burglary and/or armed robbery to support its felony murder theory. While it was not necessary that the State charge Mr. Stev-erson separately with the felonies upon which its felony murder theory was based, it did, in fact, do so. Mr. Steverson was found guilty by reason of a special verdict of each of the separately charged offenses of first-degree murder, armed burglary with an assault, and armed robbery. Therefore, even though Mr. Steverson’s conviction for the burglary offense is legally insupportable pursuant to Delgado, his general verdict for first-degree murder is valid because we know by reason of the special verdicts that the jury found eviden-tiary support for both premeditated murder and felony murder based on the legally adequate charge of armed robbery.
We, likewise, find without merit Steverson’s second issue relating to the evidence admitted at trial regarding the shooting of Detective Rail. At Steverson’s first trial, there was extensive evidence of the shooting and its resulting circumstances to the extent our supreme court held it became a feature of the trial. On retrial, the supreme court admonished that if such evidence was to be admitted, it should be severely limited. After examining the record, we conclude that the trial judge followed the admonition of our supreme court. The relevant evidence of the shooting was appropriately limited solely to Detective Rail’s testimony of the bare facts of the shooting that occurred during the apprehension of Steverson.
Steverson’s final issue relates to the statements and admissions made to Detention Deputy Gainer while Steverson was in his holding cell after his convictions in his first trial. We also find this issue to be without merit. Gainer worked at the temporary courthouse in Bartow in May 1995, at the time of Steverson’s first two-week trial. Gainer was responsible for feeding the inmates. After the verdict in the 1995 trial, Gainer saw Steverson standing at the door of his holding cell. Gainer testified that he did not know who Stever-son was, had no prior conversations with Steverson, and although Gainer knew there was a murder trial going on, he had no knowledge that Steverson was the person charged with murder.
Steverson was alone in the cell and standing at the glass window of the door of the cell, just staring. Gainer thought Steverson may not have eaten so he approached and asked if he had been fed. Steverson responded affirmatively. Gainer then said, “Well, what’s the matter?” or “Well, what’s wrong? I mean you seem like you want something.” Steverson responded, “I did what they said I did.” Gainer asked, “What did you do?” Referring to his later written report, Gainer testified as to the details of what Stever-son told him. He stated that he had a conversation with Steverson about a killing incident and that Steverson stated that he stabbed someone after drinking and getting high. The victim asked Steverson to pawn his TV and VCR for drugs, which he did. When he returned, the victim demanded the pawn ticket or the money, but Steverson told him he had spent the money on more drugs. The victim said he wanted the TV back or he was going to call the police. Steverson said he panicked and stabbed the victim because he did not *169 want to go to jail. He did not say what type of weapon he used. Steverson told Gainer that he tied the victim up in a chair and put a bag or something over his head. The man kept moving so he kept stabbing him. He was so high he did not know what he was doing. Gainer thought Stev-erson seemed remorseful. Gainer said it was possible he discussed God and salvation with Steverson.
Gainer did not read Steverson Miranda rights. He was fairly new at the time, and commonly talked to inmates in the holding cells. Gainer testified that he did not encourage Steverson to speak about the details of the crime. However, he watched and observed for the security of inmates and whether they might be suicidal. Deputy Gainer testified that he preaches the “Word of the Lord” any opportunity he has to inmates or others, and he did so here. If Steverson said something that Gainer did not know anything about, Gainer would ask ‘What do you mean?” Gainer did not attempt to stop Steverson from speaking, and Steverson seemed to speak freely. The conversation lasted roughly ten to fifteen minutes.
The court denied the motion to suppress. The judge ruled there was no improper interrogation by law enforcement and that the statements made by Stever-son to Deputy Gainer were freely and voluntarily given. We agree.
We affirm Steverson’s convictions and sentence for first-degree murder and armed robbery. On the basis of Delgado, we reverse Steverson’s conviction and sentence for armed burglary with an assault.
Affirmed in part; reversed in part.
PARKER, A.C.J. and SILBERMAN, J., concur.