817 So.2d 799 (2002)
William Melvin WHITE, Appellant,
v.
STATE of Florida, Appellee.
No. SC00-1148.
Supreme Court of Florida.
April 4, 2002.
Rehearing Denied May 16, 2002.
*801 Chandler R. Muller, Winter Park, FL, for Appellant.
Robert A. Butterworth, Attorney General, and Stephen D. Ake, Assistant Attorney General, Tampa, FL, for Appellee.
PER CURIAM.
William Melvin White appeals his sentence of death following resentencing. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons expressed below, we affirm the death sentence.
The facts of the crime and procedural history of this case are detailed in White v. State, 729 So.2d 909 (Fla.1999):
[White] was convicted of the first-degree murder of Gracie Mae Crawford. The facts of the crime are detailed in our opinion on direct appeal.
White was a member of a Kentucky chapter of the Outlaws, a motorcycle gang, but was visiting the Orlando chapter. A group of the Outlaws, accompanied by some girl friends, visited an Orlando nightclub where they met Gracie Mae Crawford. Gracie *802 Mae accompanied some of the Outlaws back to their Orlando clubhouse. Soon after returning to the clubhouse, White retired to a bedroom with his girl friend. Sometime thereafter White was called by Richard DiMarino who stated that Crawford liked blacks and that they had to teach her a lesson. White dressed and went into the kitchen area where he joined DiMarino and Guy Ennis Smith in severely beating Crawford. Whether DiMarino or White led the assault is unclear, but one witness testified of White's hitting Crawford with his fist and knocking her to the floor. After the beating, DiMarino and White placed Crawford in the middle of the front seat of White's girl friend's car. White started driving but along the way stopped the car and DiMarino drove the car to the end of a deserted road. (The victim, White and DiMarino had done a lot of drinking that evening, but White's girl friend testified that he knew what he was doing.) After they stopped the car, DiMarino and White pulled Crawford from the car, passed her over a barbed wire fence, and laid her on the ground. White then straddled her, took out his knife, stabbed her fourteen times and slit her throat. He handed the knife to DiMarino who also cut her throat. Crawford died as a result of the wounds inflicted upon her.
While leaving the area White and DiMarino ran out of gas at the Seaworld parking lot and were later identified by Seaworld security guards who had given them gas. White and DiMarino went back and picked up the body of the deceased and thereafter discarded it at a different place. The body was discovered that afternoon.

White v. State, 415 So.2d 719, 719-20 (Fla.1982). After a penalty phase proceeding in which defense counsel proffered no witnesses or evidence, the advisory jury unanimously recommended that appellant be sentenced to death. The trial court, finding that the three aggravating circumstances [n. 1] outweighed the sole statutory mitigating circumstance, [n. 2] sentenced appellant to death in accordance with the unanimous jury recommendation. We affirmed the conviction and sentence. Id. at 719-21. The United States Supreme Court denied certiorari review on November 29, 1982. See White v. Florida, 459 U.S. 1055, 103 S.Ct. 474, 74 L.Ed.2d 622 (1982).
[n. 1]. The trial court found: (1) the murder was committed during the course of a kidnapping; (2) the murder was committed to disrupt or hinder enforcement of laws; and (3) the murder was heinous, wicked, and cruel.
[n. 2]. The trial court found that appellant had no prior violent felony conviction.
Appellant filed [his] initial rule 3.850 motion in 1983. In 1987, while appellant's rule 3.850 motion was pending, the Supreme Court issued its opinion in Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). Hitchcock held that a Florida jury charge which precluded the trial court and the advisory jury from considering nonstatutory mitigation was unconstitutional. Appellant subsequently filed a petition for habeas relief based on Hitchcock. The trial court stayed further proceedings in this postconviction motion until final disposition of the habeas petition. We rejected appellant's claim for relief, concluding that "[t]he charge which may have limited the jury to a consideration of statutory mitigating *803 circumstance was clearly harmless." White v. Dugger, 523 So.2d 140, 141 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 184, 102 L.Ed.2d 153 (1988). The trial court subsequently held an evidentiary hearing on most of appellant's claims and denied relief on all claims by order. ...
Id. at 910-11.
In White's appeal of the denial of his 3.850 motion, this Court affirmed the trial court's order as to his conviction. See id. at 910. However, on the basis of a Hitchcock error,[1] we vacated White's death sentence and remanded for a new sentencing proceeding before a jury. See id.
On remand, the resentencing jury voted ten to two in favor of imposing the death sentence. In sentencing White to the death penalty, the trial court found four aggravators.[2] The trial court also found and assigned weight to one statutory and nine nonstatutory mitigating factors.[3] In weighing the nature and quality of these aggravators and mitigators, the trial court found that the aggravators greatly outweighed the mitigators.
On appeal to this Court, White raises five issues: (1) the trial court erred in not permitting the cross-examination of the key State witness concerning the underlying facts of the witness's subsequent murder conviction; (2) the trial court erred in finding that the murder was committed to disrupt or hinder the enforcement of laws; (3) the trial court erred in rejecting the statutory mitigating factor that the murder was committed while White was under extreme duress or under the substantial domination of another; (4) the imposition of the death penalty is disproportionate; (5) White's execution, after serving more than twenty-two years on death row, will constitute cruel and unusual punishment.
We summarily reject White's fifth claim, as it has previously been considered and rejected. See Rose v. State, 787 So.2d 786, 805 (Fla.2001) (prolonged delay in imposing death penalty does not constitute cruel and unusual punishment). We now turn to the issues that merit discussion.

I. COLLATERAL EVIDENCE
White claims that the trial court erred in preventing defense counsel's full cross-examination of Richard DiMarino, the State's key witness and the other perpetrator of the 1978 murder of Crawford, regarding the facts underlying the third-degree *804 murder to which DiMarino pled guilty in Maryland in 1990. This Maryland crime occurred twelve years after White was convicted for the first-degree murder of Crawford.
The facts underlying DiMarino's Maryland crime occurred in July 1990, when DiMarino and a codefendant were involved in an incident while riding their motorcycles. Words with two rival biker gang members escalated into a fight with the two rival bikers at an intersection. One of the two rival bikers fled, while DiMarino and a codefendant continued to fight with the remaining biker. In the fight, the remaining biker was stabbed and died from a single stab wound to the chest. DiMarino agreed to plead guilty to third-degree murder and agreed to testify against his codefendant in exchange for a reduced sentence of twenty years with ten years of the sentence suspended.
Prior to DiMarino's testimony at the resentencing proceeding, the State filed a motion in limine seeking to prohibit defense counsel from questioning DiMarino regarding the underlying facts of the 1990 Maryland murder conviction. After hearing argument from counsel, the trial court stated:
I certainly understand the State's argument on this particular motion. However, I'm also aware that this is the penalty phase of a first degree murder conviction. And that in the penalty phase the court can step outside the bounds of the traditional rules of evidence, step out of bounds in the allowing of hearsay testimony.
Therefore, my ruling is going to be as follows: the defense in order to evaluate the credibility of Mr. DiMarino and also evaluate, properly put before the jury clearly what weight should be given to mitigating circumstances, the defense may ask Mr. DiMarino whether he has since his conviction for this particular crime been convicted of a felony. The defense may also ask him what type of felony it was, but may not delve into the facts of this case, i.e., was there a stabbing, was a throat slit, et cetera. You may also ask him if he negotiated some type of lesser sentence for his testimony against a codefendant, if that in fact was the circumstance of that particular murder.
The defense may also inquire as to his lifestyle.
DiMarino gave testimony, on direct and cross-examination, that in 1978, he was convicted and sentenced to fifteen years in prison for the third-degree murder of Crawford. Thereafter, DiMarino agreed to testify against his codefendants, Guy Ennis Smith and White, in exchange for concurrent time in prison on other unrelated felony charges. To protect DiMarino from retaliation from members of the Outlaws motorcycle gang, the State agreed to remove a tattoo and transfer DiMarino to an out-of-state prison facility.
DiMarino further testified that he had been convicted of more than twenty-five felonies, including the 1990 Maryland third-degree murder for which he received a twenty-year sentence with ten years of the sentence suspended, in exchange for his testimony against his codefendant. Furthermore, defense counsel established that DiMarino was on parole for the 1990 Maryland third-degree murder conviction; thus, any deviation from DiMarino's original 1978 testimony in the Crawford case could have been the basis for a perjury charge, constituting a parole violation that could have required DiMarino to serve his complete sentence for the 1990 Maryland murder conviction.
On appeal, White now claims that the trial court erred in preventing defense *805 counsel's full cross-examination of DiMarino regarding the facts underlying his 1990 third-degree murder conviction in Maryland. White's first subclaim is that the facts underlying DiMarino's 1990 third-degree murder conviction are similar to the facts of Crawford's murder, in that in both crimes DiMarino killed a person by stabbing and then blamed a codefendant for his crime. Hence, the trial court's limitation on the cross-examination of DiMarino erroneously prevented White from using the facts underlying DiMarino's Maryland crime to impeach DiMarino's asserted minimal involvement in Crawford's murder. See § 921.141(6)(d), Fla. Stat. (1999) ("[A] mitigating circumstance shall be ... [that the] defendant was an accomplice in the capital felony committed by another person and his or her participation was relatively minor."). White's second subclaim is that the facts underlying DiMarino's 1990 Maryland third-degree murder conviction should have been admitted as reverse Williams[4] rule evidence under section 90.404(2)(a), Florida Statutes (1999). White argues that the similarity between the facts underlying DiMarino's 1990 third-degree murder conviction and Crawford's murder show DiMarino's pattern of killing a person by stabbing and then blaming another for his crime. Hence, the trial court's limitation on White's cross-examination of DiMarino erroneously prevented the presentation of collateral evidence relevant to discrediting the view that DiMarino played a minimal role in Crawford's murder. See § 921.141(6)(d), Fla. Stat. We disagree.
We first discuss White's second subclaim. In Zack v. State, 753 So.2d 9 (Fla.2000), cert. denied, 531 U.S. 858, 121 S.Ct. 143, 148 L.Ed.2d 94 (2000), we explained:
In Williams v. State, 110 So.2d 654 (Fla.1959), this Court reiterated the standard rule for admission of evidence; that is, that any evidence relevant to prove a material fact at issue is admissible unless precluded by a specific rule of exclusion. See § 90.402, Fla. Stat. (1995). The Court also said relevant evidence will not be excluded merely because it relates to facts that point to the commission of a separate crime, but added the caveat that "the question of the relevancy of this type of evidence should be cautiously scrutinized before it is determined to be admissible." 110 So.2d at 662. This rule concerning the admissibility of similar fact evidence has been codified by the Legislature as section 90.404(2), Florida Statutes (1995).
Later, in Bryan v. State, 533 So.2d 744 (Fla.1988), we made it clear that the admissibility of other crimes evidence is not limited to crimes with similar facts. We stated that similar fact evidence may be admissible pursuant to section 90.404, and other crimes or bad acts that are not similar may be admissible under section 90.402. We reiterated the distinction between "similar fact" evidence and "dissimilar fact" evidence in Sexton v. State, 697 So.2d 833, 837 (Fla.1997).
Thus, section 90.404 is a special limitation governing the admissibility of similar fact evidence. But if evidence of a defendant's collateral bad acts bears no logical resemblance to the crime for which the defendant is being tried, then section 90.404(2)(a) does not apply and the general rule in section 90.402 controls. A trial court has broad discretion in determining the relevance of evidence and such a determination will not be disturbed absent an abuse of discretion. Heath v. State, 648 So.2d 660, 664 (Fla.1994). *806 Thus, whether the evidence of other bad acts complained of ... is termed "similar fact" evidence or "dissimilar fact" evidence, its admissibility is determined by its relevancy. The trial court must utilize a balancing test to determine if the probative value of this relevant evidence is outweighed by its prejudicial effect. See § 90.403, Fla. Stat. (1995); Gore v. State, 719 So.2d 1197 (Fla.1998).
Id. at 16. "Admission of evidence is within the discretion of the trial court and will not be reversed unless there has been a clear abuse of that discretion." Ray v. State, 755 So.2d 604, 610 (Fla.2000); see also Chandler v. State, 534 So.2d 701, 703 (Fla. 1988). Discretion is abused only when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court. See Trease v. State, 768 So.2d 1050, 1053 n. 2 (Fla.2000).
We conclude that the trial court did not abuse its discretion in refusing to admit the facts underlying the 1990 Maryland crime but affording broad latitude concerning DiMarino's criminal background. DiMarino's 1990 Maryland murder was twelve years remote in time from the 1978 murder for which White was being resentenced. Moreover, the facts and circumstances of the Maryland murder are very different from Crawford's murder. See State v. Savino, 567 So.2d 892, 894 (Fla. 1990) (defendant must demonstrate "a close similarity of facts, a unique or `fingerprint' type of information" in order to introduce evidence of another crime to show that someone other than the defendant committed the instant crime). While both murders did involve stabbing with a knife, the 1978 murder involved activities within White's motorcycle group and the kidnapping of a young woman who was then stabbed fourteen times, and DiMarino's 1990 murder was during a fight at an intersection between rival motorcyclists while biking.
The trial court achieved the proper balance by admitting evidence regarding the circumstances of DiMarino's 1990 guilty plea to third-degree murder in Maryland, while not allowing this witness's conviction for third-degree murder to become the focus of White's penalty phase proceeding. See Steverson v. State, 695 So.2d 687, 689 (Fla.1997) ("Even when evidence of a collateral crime is properly admissible in a case, we have cautioned that `the prosecution should not go too far in introducing evidence of other crimes. The state should not be allowed to go so far as to make the collateral crime a feature instead of an incident.' Randolph v. State, 463 So.2d 186, 189 (Fla.1984)."); Escobar v. State, 699 So.2d 988, 997 (Fla.1997), abrogated on other grounds by Connor v. State, 803 So.2d 598 (Fla.2001); Stano v. State, 473 So.2d 1282, 1289 (Fla.1985) ("[E]vidence of unrelated crimes, however, cannot be made a feature of the trial."). Therefore, in light of the limited relevance of the facts underlying DiMarino's 1990 Maryland crime and the evidence actually presented through the testimony of DiMarino, we conclude that the trial court did not abuse its discretion in refusing to admit evidence of DiMarino's Maryland crime as reverse Williams rule evidence. See Gore v. State, 784 So.2d 418, 432 (Fla. 2001) (trial court did not abuse its discretion where defendant failed to show relevance and requisite similarities to admit evidence of collateral crime as reverse Williams rule evidence); Crump v. State, 622 So.2d 963, 969 (Fla.1993) (trial court properly excluded evidence regarding substance of a detective's interviews of other suspects because such evidence did not constitute reverse Williams rule evidence); Jones v. State, 580 So.2d 143, 145 (Fla. 1991) (evidence regarding witnesses' convictions *807 involving drug-related offenses and violence against police did not meet test for reverse Williams rule evidence); Savino, 567 So.2d at 894 (no abuse of discretion where trial court ruled inadmissible reverse Williams rule evidence that was not sufficiently similar to murder at issue); Rivera v. State, 561 So.2d 536, 540 (Fla.1990) (trial court did not abuse its discretion in excluding proffered reverse Williams rule evidence).
With respect to White's first subclaim, the trial court's ruling in the present case did not prevent the effective and thorough impeachment of DiMarino. Our review of the record demonstrates that through the cross-examination of DiMarino the jury was made aware of all the pertinent details concerning DiMarino's prior felonies and his agreements to testify against his codefendants in exchange for more favorable sentences. Therefore, we find no abuse of discretion in the trial court's limiting the admission of collateral evidence concerning the factual details of the witness's unrelated 1990 Maryland crime. See Steverson, 695 So.2d at 689; see also Fotopoulos v. State, 608 So.2d 784, 791 (Fla.1992) (credibility of any witness may be attacked by evidence of prior felony conviction, and such inquiry is generally restricted to existence of prior convictions and number of such convictions); Jackson v. State, 498 So.2d 906, 909 (Fla.1986).
White further contends that even if the trial court did not err in limiting the cross-examination, the State opened the door to such examination when it elicited from DiMarino that he was "sickened" by Crawford's murder. Again, we cannot conclude that the trial court abused its discretion in holding that the facts and circumstances of the 1990 Maryland murder do not impeach DiMarino's testimony that he was "sickened" by the murder of Crawford in 1978. See Bryan, 533 So.2d at 750 (trial judge has wide discretion in determining permissible scope of cross-examination). Moreover, considering the evidence concerning DiMarino that the trial court did admit, any error in sustaining the objection to the admissibility of this evidence is harmless beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).

II. HINDER THE ENFORCEMENT OF LAWS AGGRAVATOR
White's second claim is that the trial court erred in finding that the victim was killed in order to disrupt or hinder the enforcement of laws, i.e., to escape detection, prosecution, and punishment for the preceding battery committed upon the victim at the Outlaws' clubhouse. In reviewing a trial court's finding of an aggravating circumstance, this Court reviews the record to determine whether the trial court applied the correct rule of law and, if so, whether such finding is supported by competent, substantial evidence. See Willacy v. State, 696 So.2d 693, 695-96 (Fla.1997).
In order to establish this aggravating circumstance, the State must demonstrate beyond a reasonable doubt that the dominant motive for the murder was the elimination of the witness. See Foster v. State, 778 So.2d 906, 918 (Fla.2000); Peterka v. State, 640 So.2d 59, 71 (Fla. 1994). The witness elimination aggravating factor may be inferred from circumstantial evidence without direct evidence of the defendant's motive. See Foster, 778 So.2d at 918; Hall v. State, 614 So.2d 473, 477 (1993); Preston v. State, 607 So.2d 404, 409 (1992).
In its sentencing order, the trial court found:
The facts of this case establish that Defendant and his co-defendants kidnaped and murdered Gracie Mae Crawford to avoid discovery and prosecution for the battery committed upon her at the Outlaws clubhouse, just prior to the *808 murder. Evidence shows that co-defendant Smith stated that "he wanted no witnesses," so they had to "take care of business." Co-defendant DiMarino knew that this meant they would kill Gracie Mae Crawford to avoid prosecution for the severe beating she received from these three co-defendants. Defendant placed Crawford in the middle of the front seat of Defendant's girlfriend's car; DiMarino then got into the front passenger seat, blocking any possible escape by Crawford. The evidence shows that the victim did not go with Defendant willingly to the place where she was passed over a barbed wire fence and brutally murdered.
State v. White, No. CR78-1840, order at 3 (Fla. 9th Cir. Ct. order filed Apr. 20, 2000).
We have repeatedly affirmed the finding of the witness elimination aggravating circumstance in similar situations when the victim has been transported to another location and then killed. See Jones v. State, 748 So.2d 1012, 1027 (Fla.1999) (upholding elimination of witness aggravator when defendant robbed victim and subsequently transported her to secluded location, where he killed her); Preston, 607 So.2d at 409 (upholding elimination of witness aggravator where defendant robbed and kidnaped victim, transported her to secluded location, and killed her). We find that these cases support the trial court's determination that this aggravator could be found in this case, and we conclude that there is competent, substantial evidence in the record to support the aggravator that White killed the victim in order to eliminate her as a witness to his prior crime. See Jones, 748 So.2d at 1027; Preston, 607 So.2d at 409.

III. EXTREME DURESS OR SUBSTANTIAL DOMINATION MITIGATOR
White's third claim is that the trial court erred in failing to find the statutory mitigating circumstance that White acted under extreme duress or under the substantial domination of another during the murder. A trial court may reject a defendant's claim that a mitigating circumstance has been established provided that the record contains competent, substantial evidence to support the rejection. See Connor, 803 So.2d at 611; Nibert v. State, 574 So.2d 1059, 1062 (Fla.1990). Whether a mitigating factor has been proven by the evidence is a question of fact subject to the competent, substantial evidence standard. See Zack, 753 So.2d at 19.
In rejecting the extreme duress statutory mitigator the trial court found:
There was no evidence that Defendant acted under extreme duress. The evidence from other members of the Outlaws showed that Defendant was a follower, not a leader, and because of his alcoholism, could not be depended upon within the organization. Dr. Caddy testified that Defendant "was a man who was readily available to be influenced by others," due to his intoxication, alcoholism, polysubstance abuse and personality variables. The State concedes that Defendant had a need for approval from the other members of the Outlaws which influenced him to be drawn into unlawful activities of the other members. The fact that he was in the company of another Outlaw club member when he committed the murder, to some extent, may have influenced him to carry it out.
However, while Defendant may have been a follower and easily influenced, such evidence is insufficient to establish that Defendant committed this crime under the "substantial domination" of another. The evidence does not suggest such a leap. While some evidence suggested that the murder may have initially *809 been Smith's idea, there was no evidence that Defendant was under the substantial domination of anyone at the point where he stabbed the victim. Therefore, this Court rejects the existence of this mitigating circumstance.
State v. White, order at 5.
The present case is similar to Valdes v. State, 626 So.2d 1316, 1324 (Fla.1993), in which this Court upheld the rejection of the extreme duress or substantial domination statutory mitigator. In Valdes, this Court found:
Here, the evidence offered to support Valdes' claim of substantial domination by Van Poyck was Valdes' former girlfriend's testimony that Valdes went with Van Poyck the morning of the murder to do him a favor, that they had moved to Fort Lauderdale to get away from Van Poyck, and that Van Poyck was dominant over Valdes. However, Valdes clearly participated equally in the escape attempt and murder. Valdes provided the murder weapon, and he was the one who forced Griffis from the van and took him to the back of the vehicle, where he was executed. The testimony indicated that Valdes and Van Poyck acted in concert during the entire episode. Contrary to Valdes' argument, the fact that we previously characterized Van Poyck as the major participant in this incident does not mean Valdes' participation was minor. We find substantial competent evidence to support the trial court's rejection of these proposed mitigators.
Id. at 1324 (emphasis added).
In the present case, there was similar evidence supporting the trial court's finding that White played the dominant role in committing this murder. There is no evidence that anyone externally pressured White at the time of the stabbing murder of Crawford. There is evidence in the record, however, that White stabbed Crawford fourteen times and slit her throat before giving the knife to DiMarino to slice her throat. White told his girlfriend to forget that she had heard the beating of Crawford. After taking the keys to his girlfriend's car, White helped to carry Crawford to this car and initially drove the car when taking the victim from the Outlaws' clubhouse. White also provided the murder weapon, a knife. Accordingly, we conclude that there is competent, substantial evidence in the record supporting the trial court's rejection of the extreme duress statutory mitigator. See also San Martin v. State, 705 So.2d 1337, 1348 (Fla.1997) (affirming rejection of extreme duress or substantial domination mitigator where evidence established that defendant was integral part of planning and execution of crimes); Raleigh v. State, 705 So.2d 1324, 1330 (Fla.1997) (same); Hill v. State, 515 So.2d 176, 178 (Fla.1987) (same).

IV. PROPORTIONALITY
White's fourth claim is that his death sentence is disproportionate. Specifically, White first argues that his death sentence is impermissibly disparate from the fifteen-year sentence received by his codefendant DiMarino, who White contends instigated the beating of the victim, escorted her to a deserted area, and slit her throat with the intent to kill her. White's second proportionality subclaim is that his death sentence is disproportionate to other cases in which the death penalty was not imposed. We first address the alleged disproportionate treatment of DiMarino.
"When a codefendant is equally as culpable or more culpable than the defendant, the disparate treatment of the codefendant may render the defendant's punishment disproportionate." Sexton v. *810 State, 775 So.2d 923, 935 (Fla.2000). If the defendant, however, is the more culpable participant in the crime, disparate treatment of the codefendant is justified. See id. "A trial court's determination concerning the relative culpability of the co-perpetrators in a first-degree murder case is a finding of fact and will be sustained on review if supported by competent substantial evidence." Puccio v. State, 701 So.2d 858, 860 (Fla.1997).
In its sentencing order, the trial court carefully considered and rejected White's argument that DiMarino was equally culpable for this murder:
Defendant was an accomplice in the capital felony committed by another person and his participation was relatively minor.
Defendant argues that because there was evidence that he was not a leader and that he may have been easily influenced by others, it follows that on the night of the homicide he was following the lead of others, particularly DiMarino. Even if this were true (and the Court finds no evidence to support Defendant's argument), the Court cannot conclude those facts establish that Defendant's participation was relatively minor. In fact, quite the contrary is true. The evidence clearly establishes that Defendant delivered the fatal stab wounds to the victim's body, and handed the knife to DiMarino to slit her throat. Further, an employee from Sea World testified that he observed no blood on DiMarino, yet noticed what appeared to be a spot of blood on Defendant's forearm. Therefore, the Court rejects the existence of this mitigating circumstance.
. . . .
Sentences of co-defendants to life or a lesser term of imprisonment.
In denying Defendant's Petition for Writ of Habeas Corpus, the Florida Supreme Court rejected the issue of disproportionate treatment of DiMarino, stating:
White's co-perpetrator, Richard Di-Marino, was convicted of only third-degree murder. In White's original appeal we noted this fact and stated: "While this is fortunate for him [Di-Marino], it does not require the reduction of White's sentence." The two juries found different culpabilities. It is permissible to impose different sentences on capital co-defendants where their various degrees of participation and culpability are different from one another. (citations omitted).
The Court finds that the lesser sentence of DiMarino is not a mitigating circumstance. Co-defendant Guy Ennis Smith was convicted of first degree murder and was sentenced to life imprisonment. As quoted above, the Florida Supreme Court stated that capital co-defendants may receive different sentences based on their varying degrees of participation and culpability. The evidence clearly established that it was Defendant, not Smith, who repeatedly stabbed Crawford, causing her death. Therefore, the Court finds that the life sentence of Smith is not a mitigating circumstance.
State v. White, order at 5, 9. The testimony from DiMarino, the Sea World employees, and the medical examiner constitute competent, substantial evidence to support the trial court's findings.[5]See Sexton, 775 *811 So.2d at 935-36; Howell v. State, 707 So.2d 674, 682-83 (Fla.1998) (rejecting claim of disparate sentencing where codefendant pled to second-degree murder and received sentence of forty years); Cardona v. State, 641 So.2d 361, 365 (Fla.1994) (rejecting claim of disparate sentencing where codefendant pled guilty to second-degree murder and testified against defendant); Cook v. State, 581 So.2d 141, 143 (Fla.1991) (rejecting claim of disparate sentencing where codefendants pled guilty to second-degree murder and received sentences of twenty-three and twenty-four years); Hayes v. State, 581 So.2d 121, 127 (Fla.1991) (rejecting claim of disparate sentencing where codefendant pled guilty to second-degree murder and testified against defendant); Brown v. State, 473 So.2d 1260, 1268 (Fla.1985) (rejecting claim of disparate sentencing where codefendant pled guilty to second-degree murder). We find no error in the trial court's ruling on this issue.
Finally, we address White's subclaim that his death sentence is disproportionate when compared to other similar capital cases where the defendant received a life sentence. The death penalty is reserved for the most aggravated and least mitigated of capital crimes. See Sexton, 775 So.2d at 935. In deciding whether death is a proportionate penalty, the Court must consider the totality of the circumstances of the case and compare the case with other capital cases. See id.
In the present case, the trial court sentenced White to death in an eleven-page order carefully detailing its findings that the found aggravators greatly outweighed the mitigators. The circumstances of this case are similar to other cases in which we have upheld the death penalty. For instance, in Singleton v. State, 783 So.2d 970, 979 (Fla.2001), the trial court found as aggravators to a stabbing murder HAC and the existence of a prior violent felony. In Singleton, the trial court determined that these aggravators outweighed the statutory mitigators of extreme mental disturbance, inability to appreciate the criminality of conduct, and the defendant's age of sixty-nine at the time of the offense, and the nine nonstatutory mitigators, which included that the defendant was an alcoholic and under the influence of alcohol at the time of the murder. In Alston v. State, 723 So.2d 148, 153 (Fla.1998), where the defendant was convicted for the armed robbery, kidnapping, and murder of a victim, the trial court found five aggravators (prior violent felonies, committed during the course of robbery/kidnapping and for pecuniary gain, avoid arrest, HAC, and cold, calculated, and premeditated). In Alston, the trial court also found five nonstatutory mitigators, including a horribly deprived and violent childhood, low intelligence, and mental age. See Alston, 723 So.2d at 153, 162. In Alston we found the death sentence proportional where the trial court determined that the found aggravators outweighed five nonstatutory mitigators. See id.; see also Spencer v. State, 691 So.2d 1062 (Fla.1996) (affirming death sentence for stabbing murder where trial court found HAC and prior violent felony aggravators outweighed two statutory mental mitigators and numerous nonstatutory mitigators). Hence, we reject White's contention and find that the death sentence is proportionate.
Accordingly, for the reasons expressed, we affirm the sentence of death.
It is so ordered.
*812 WELLS, C.J., and HARDING, ANSTEAD, LEWIS, and QUINCE, JJ., concur.
SHAW and PARIENTE, JJ., concur in result only.
NOTES
[1] Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).
[2] The trial court found the following four aggravators: (1) White was convicted of a prior violent felony; (2) the murder was committed while White was engaged in the commission of a kidnapping; (3) the murder was committed to disrupt or hinder the enforcement of laws; and (4) the murder was heinous, atrocious, or cruel (HAC).
[3] The trial court found and assigned weight to one statutory and nine nonstatutory mitigating factors: (1) the murder was committed while White was under the influence of an extreme mental or emotional disturbance (little weight) (statutory); (2) White had a poor family background and an abusive childhood, lived in family squalor, and suffered from parental neglect (some weight); (3) White had an extensive history of alcohol and substance abuse from an early age (some weight); (4) White had organic brain damage and neurological deficiencies (some weight); (5) White had marginal intelligence or a low IQ (little weight); (6) White was intoxicated and had diminished capacity at the time he committed the crime (very little weight); (7) White was a willing worker and a good employee (some weight); (8) White lacked future dangerousness, had the potential to be rehabilitated, and had and a good prison record (some weight); (9) White had contributed to the community (very little weight); (10) White was a loving person and was generous to others (very little weight).
[4] Williams v. State, 110 So.2d 654 (Fla.1959).
[5] Any argument that this Court should unilaterally reject DiMarino's testimony is without merit. See Brown v. State, 721 So.2d 274, 282 (Fla.1998) ("The question of whether an accomplice is credible and the weight to be given to the testimony are issues for the jury to determine."). In the instant case, DiMarino was thoroughly impeached before the jury. Yet, the jury voted ten to two in favor of the death penalty, finding DiMarino sufficiently credible to sentence White to death. This Court does not disturb this finding. See Brown, 721 So.2d at 282.