WALLACE, Judge.
Lebert F. Batten challenges the judgments and concurrent sentences of five years’ imprisonment on each count imposed on him after a jury found him guilty of grand theft, a violation of section 812.014(2)(c)(2), Florida Statutes (1999), and odometer fraud, a violation of section 319.35(l)(c), Florida Statutes (1999). The State introduced Williams[1] rule evidence at Batten’s trial consisting of twenty-five classified ads he placed in The St. Peters-burg Times for the sale of various automobiles. The State relied heavily on this evidence in its closing arguments to the jury as demonstrating Batten’s intent to commit the charged offenses. Because Batten’s placement of the newspaper ads did not tend to prove that he had the requisite criminal intent, we reverse the judgments and sentences, and we remand this case for a new trial.

The Facts

On June 20, 2000, Batten, who was seventy-two years old at the time, sold a 1992 Lincoln Town Car to the alleged victim, Greg Marston. Although Batten was not a licensed motor vehicle dealer, he had purchased the car two months earlier at the St. Petersburg Auto Auction from Howard Gilmore of Gilmore Auto Brokers. At the time Gilmore sold Batten the car, its actual mileage was 139,293. Nevertheless, because the car had a five-digit odometer, the mileage indicated was only 39,293. The title clerk who had handled Gilmore’s purchase of the car from the former owner failed to properly complete all of the necessary documentation involved in the vehicle title transfer. As a result, the papers Gilmore gave Batten concerning the car were ambiguous concerning its actual mileage.
In addition to the defective document package, the appearance of the car belied its true mileage. The witnesses at Batten’s trial agreed that nothing about the car’s appearance suggested that the odometer reading might be inaccurate. Gilmore testified that the car looked like “a cream puff.” Marston, the alleged victim, testified that the car “was in beautiful shape.”
Batten placed an ad in The St. Peters-burg Times offering the car for sale. During a telephone call Marston made in response to the ad, Batten told Marston that the car had 42,000 miles. Marston arranged to inspect the car and paid Batten $7900 for it. When Marston received the title to the car about two months later, it reflected the mileage as 40,996. The title also indicated that the mileage “exceeds limits.” Upon further investigation, Mar- *492 ston learned that the actual mileage on the vehicle was 140,996 miles.[2] He contacted Batten about the discrepancy, but he did not receive a satisfactory response. Mar-ston then contacted the authorities about pressing charges against Batten.
Proof of Batten’s knowledge that the car’s actual mileage was 100,000 miles greater than its odometer indicated was an essential element of the State’s case on both the grand theft and the odometer fraud counts. In a pretrial notice of its intent to use Williams rule evidence, the State alleged that Batten had engaged in business as a motor vehicle dealer without first obtaining a license, a violation of section 320.27(2), (8) Florida Statutes (1999). At trial, the State’s Williams rule evidence consisted of twenty-five classified ads Batten had placed in The St. Petersburg Times. Of the twenty-five ads placed, only twenty-one were for the sale of vehicles, and only fourteen of those actually ran in the newspaper. In the fourteen ads, Batten offered five vehicles for sale: a 1991 Lincoln Town Car, a 1992 Lincoln Town Car (the subject of the charged offenses), a 1993 Lincoln Town Car, a 1990 Mercury Grand Marquis, and a 1991 Mercury Grand Marquis. None of the ads stated the mileage of the vehicle being offered for sale. According to the State’s expert witness, these five vehicles shared a common trait: all had five-digit mechanical odometers. Once the odometers reached 99,999 miles, they would roll over to zero and start again. On these and similar vehicles, there is no way to determiné the actual mileage without a review of the car’s documentation. The basis of the State’s case against Batten was that he took advantage of the fact that the car had a five-digit odometer in order to misrepresent to Marston that the mileage showing on the odometer was the true mileage when, in fact, the true mileage was 100,000 miles more than the odometer indicated. The State argued that the classified ads demonstrating that Batten was dealing in vehicles with five-digit odometers were relevant to show absence of mistake because they established that Batten was familiar with selling this type of vehicle and with the paperwork associated with such sales. The trial court admitted the ads into evidence over Batten’s timely objection.

Law

The rule of admissibility for evidence of other crimes or bad acts, commonly known as the Williams rule, is codified at section 90.404(2)(a), Florida Statutes (2002). That section provides:
Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
The test of the admissibility of Williams rule evidence is relevancy, and the test of its inadmissibility is its lack of relevancy. Chandler v. State, 702 So.2d 186, 192 (Fla.1997). A trial court has broad discretion in determining whether the other crime evidence is relevant, and such a determination will not be disturbed absent an abuse of discretion. White v. State, 817 So.2d 799 (Fla.2002).
The substantial similarity of crimes is a requirement for admitting evidence of a collateral crime when the evidence is sought to be admitted for the *493 specific purpose of establishing the absence of mistake. Robertson v. State, 829 So.2d 901 (Fla.2002). “[T]o minimize the risk of a wrongful conviction, the similar fact evidence must meet a strict standard of relevance. The charged and collateral offenses must be not only strikingly similar, but they must also share some unique characteristic or combination of characteristics which sets them apart from other offenses.” Id. at 909 (quoting Heuring v. State, 513 So.2d 122, 124 (Fla.1987)).

Analysis

In this case, the State claimed that Batten committed the crimes charged by misrepresenting the mileage of a car that had a five-digit odometer. Although the collateral offense — engaging in business as a motor vehicle dealer without a license— involved automobiles that also had five-digit odometers, the State did not offer any evidence that Batten had previously misrepresented the mileage of these or any other vehicles. In fact, none of the ads referred to the mileage of the vehicle being offered for sale. Although the ads supported the State’s claim that Batten was acting as a motor vehicle dealer without a license,[3] the State did not offer any evidence that Batten actually sold any of the other advertised vehicles. Moreover, the placement of the classified ads in the newspaper did not establish that Batten had been personally involved with the paperwork with respect to any of the vehicles that might have been sold. Therefore, the ads did not, as the State contended, demonstrate Batten’s familiarity with the sale of automobiles having five-digit odometers or the documentation associated with the sale of motor vehicles. Batten’s placement of classified ads offering other vehicles for sale bore no similarity to the charged offenses, and thus this evidence was not relevant to the material fact of absence of mistake. The mere fact that Batten had offered similar vehicles for sale was not probative of his intent to misrepresent the mileage of the car sold to Marston. Because the collateral crimes evidence did not meet the strict standard of relevancy, the trial court abused its discretion in allowing the State to introduce this evidence.

Harmless Error Analysis

The Supreme Court of Florida has held that “the erroneous admission of irrelevant collateral crimes evidences ‘is presumed harmful error because of the danger that a jury will take the bad character or propensity to crime thus demonstrated as evidence of guilt of the crime charged.’ ” Robertson, 829 So.2d at 913— 14 (quoting Castro v. State, 547 So.2d 111, 115 (Fla.1989)). The harmless error rule requires “the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.” State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). In support of its claim of harmless error, the State points to other evidence it presented at trial of Batten’s intent and argues that the jury would *494 have returned the same verdicts even if the classified ads had not been admitted.
In considering the State’s claim of harmless error, we have paid particular attention to the State’s closing arguments. The prosecutor made numerous references to the classified ads during his closing arguments, including the following comments:
At the end of the State’s case, ladies and gentlemen, you were instructed by the Court that you were going to hear some evidence of other crimes allegedly committed by the defendant to be considered by you for the limited purpose of the following: Proving motive, opportunity, intent, preparation, planned knowledge [sic], identity, or the absence of mistake or accident on the part of the defendant.
The State brought to you evidence of two forms. One of 27 ads that the defendant ran and paid for with his own account using a debit card over a period of time that starts before the Marston event and includes [sic] after the Mar-ston event.
And the purpose of that evidence, ladies and gentlemen, was to show you that, (a) this was not some foolish, elderly man that was just trying to sell a car; (b) that he was unknowledgeable about the business.
[[Image here]]
He’s waiting, as you will see when you look at those classified ads, he’s waiting for the right car with the five-digit odometer, hence the 1992 Lincoln that he found from Howard Gilmore....
It’s to show the absence of any mistake whatsoever on the part of the defendant Lebert Franklin Batten as to that car’s condition the day he bought it at the auction. A guy in the business makes it his business to know what he’s buying when the only purpose he’s buying it for is for resale. And that’s the only reason he bought the car is to resell it.
[[Image here]]
Ladies and gentlemen, I want to emphasize that, number one, Mr. Batten is not on trial for not having a license to be a car dealer. And you are to use your own recollection about what Mr. Adkins testified to. The point I was trying to make is that Mr. Batten was experienced in dealing with used cars.
He was familiar with the St. Peters-burg Auto Auction. He understood and does understand the paperwork that is connected with the purchase and sale of used automobiles. And he certainly is well acquainted with what dealers look at at auctions when they decide whether to buy a motor vehicle or not at auction.
And his exclusive interest, I submit to you, was in big cars in the early 90’s with five-digit odometers. He ran what was a deceptive ad in the newspaper. He made clear misrepresentations, untruths about the car to Mr. Marston. He sold it at over a 100 percent profit.
[[Image here]]
The ads suggest a pattern. You will see that he used numerous names when he ran these ads. He didn’t always use his own name. He used several addresses. He used several phone numbers.
As these comments demonstrate, the prosecutor used the evidence of the classified ads to argue to the jury that Batten was in the business of selling vehicles with five-digit odometers so that he could more easily misrepresent their mileage and, further, that he understood the documentation associated with the purchase and sale of motor vehicles. These arguments im-permissibly bolstered the State’s case that Batten knowingly misrepresented the *495 mileage on the car he sold to Marston, an essential element of both offenses. See §§ 319.35, 812.014. If the trial court had sustained Batten’s objection and excluded evidence of the classified ads, the prosecutor would have been unable to rely on them to make these arguments on the critical issue of intent. For this reason, we conclude that the State has failed to meet its burden of showing that the error was harmless because it cannot prove beyond a reasonable doubt that the admission of the evidence of the classified ads did not contribute to the verdict. Accordingly, we reverse Batten’s judgments and sentences, and we remand this case to the trial court for a new trial.[4]
Reversed and remanded.
CASANUEVA, J., Concurs.
KELLY, J., Concurs in result only.

. Williams v. State, 110 So.2d 654 (Fla.1959).

. Referring to information published in the Kelley Blue Book, Marston testified at Batten's trial that the additional 100,000 miles reduced the retail value of the car from $8320 to $6695, a difference of $1625.

. Section 320.27(l)(c), Florida Statutes (1999), provides, in pertinent part:
“Motor vehicle dealer” means any person engaged in the business of buying, selling, or dealing in motor vehicles or offering or displaying motor vehicles for sale at wholesale or retail, or who may service and repair motor vehicles pursuant to an agreement as defined in s. 320.60(1). Any person who buys, sells, or deals in three or more motor vehicles in any 12-month period or who offers or displays for sale three or more motor vehicles in any 12-month period shall be prima facie presumed to be engaged in such business.

. Batten has also urged us to reverse a restitution order entered against him because the order was entered after he filed his notice of appeal to this court, thereby divesting the trial court of jurisdiction. The State properly cen-cedes error. See Fuller v. State, 786 So.2d 1269 (Fla. 2d DCA 2001); Edwards v. State, 734 So.2d 1130 (Fla. 2d DCA 1999). In the light of our disposition of this case, the restitution order must be vacated in any event.