884 So.2d 57 (2004)
Alberto ELIAKIM, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-3393.
District Court of Appeal of Florida, Fourth District.
March 10, 2004.
*58 Fred Haddad of Fred Haddad, P.A., Fort Lauderdale, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and David M. Schultz, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Alberto Eliakim appeals his conviction for trafficking and possession of 3,4 methylenedioxymethamphetamine (MDMA). We affirm on all issues raised by appellant, but write to address his contention that the trial court erred in not allowing him to cross-examine the state's witness about her past drug dealing activities with the co-defendant and with persons arrested pursuant to her substantial assistance plea agreement.
According to the trial testimony, Detective Eddie Marill of the Sunrise Police Department learned through Officer Bruce Goldstein of the Coral Springs Police Department that an informant could purchase a large quantity of MDMA pills (Ecstasy) from Kelly Martelo, a resident of Sunrise. At the request of Sunrise police officers, the informant called Martelo to set up a controlled purchase of sample pills. Martelo left a sample Ecstasy pill for the informant under the front door mat of her residence. Soon after the informant obtained the sample, he and Martelo made arrangements for him to purchase one thousand pills from Martelo.
Detectives Marill and Goldstein obtained a search warrant for Martelo's apartment, and, on the day scheduled for the transaction, officers set up surveillance of Martelo and her residence to determine the source of the pills. Around 11:00 a.m., Martelo called the informant to advise him that she was going to pick up the pills and that they would be ready for him within an hour. Surveillance officers observed Martelo driving her gold Camry to co-defendant Ana Jorquera's residence in North Lauderdale. When she arrived, Martelo picked up Jorquera and drove her back to Martelo's house. Jorquera then left Martelo's house driving Martelo's car. She drove into the parking lot of an Albertson's shopping plaza. There, she made a phone call at a phone booth. A few minutes later, a blue BMW driven by appellant parked next to her vehicle.
*59 Appellant got into Jorquera's car. After a brief conversation with Jorquera, appellant went to the trunk of his BMW, retrieved a yellow envelope, and handed the envelope to Jorquera through the passenger side window. Appellant then returned to the BMW and followed Jorquera back to Martelo's apartment. Jorquera went inside Martelo's apartment, carrying the yellow envelope, while appellant parked in an adjacent complex. He exited his vehicle and began pacing up and down the street near Martelo's residence.
After Jorquera entered the residence, Officer Marill gave the signal to move in and execute the warrant. Appellant was detained at his car, handcuffed, and ordered to sit on the ground. After reading appellant his Miranda rights, an officer obtained appellant's consent to search the BMW. In the trunk, the officer discovered twenty Ecstasy pills that were later determined to have markings similar to those of the pills seized in Martelo's house. Appellant was arrested and transported to the Sunrise Police Station. He was charged with trafficking in amphetamine and possession of MDMA, along with Jorquera and Martelo.
Martelo entered into a substantial assistance plea agreement with the state and testified at the joint trial of appellant and co-defendant Jorquera. She testified that she was contacted by Jason Cannon, who said he wanted to buy a large quantity of Ecstasy pills. Fortuitously, around the same time, Martelo received a phone call from Jorquera, who said she had Ecstasy pills for sale. After advising Jorquera that she needed a sample, Martelo drove Jorquera to a Taco Bell in Sunrise, where appellant was waiting outside. Appellant provided the sample pill to Jorquera, who in turn handed it to Martelo. Martelo left the pill under her doormat for Cannon. Afterwards, Martelo and Cannon made arrangements to deliver 1000 pills to Cannon.
On the day scheduled for the sale, Martelo picked up Jorquera and the two went to Martelo's apartment. While Martelo remained at home, Jorquera took Martelo's car to pick up the pills. When Jorquera returned about twenty minutes later, Martelo observed someone following Jorquera in a blue BMW. She confronted Jorquera about this as Jorquera entered the apartment. After initially denying that anyone had followed her, Jorquera admitted that her boyfriend, appellant, had followed her. To ease Martelo's concerns, Jorquera telephoned appellant and told him to move his car.
Jorquera came inside the apartment carrying a yellow manila envelope, which contained several Ziplock baggies filled with Ecstasy pills. Moments later, police officers arrived and arrested Jorquera and Martelo.
After the state concluded its direct examination of Martelo, Jorquera's attorney moved for a severance, based on discussions he had with appellant's counsel concerning his plans for cross-examining Martelo. Appellant's counsel had advised him that he intended to cross-examine Martelo about her long history of drug dealing with Jorquera. The state objected to the severance motion and to any inquiry into Martelo's prior drug transactions with Jorquera. Before ruling on the motion, the court first questioned appellant's counsel regarding the relevancy of any prior drug transactions between the two women. Counsel explained that appellant's defense was mere presence and that he needed to cross-examine Martelo about her prior drug dealings with Jorquera to "establish that Ms. Jorquera is a drug dealer and my client is an innocent bystander."
Through proffered testimony, the court heard that Martelo had sold Ecstasy to *60 Jorquera six or seven times in the past and had bought cocaine and Ecstasy from Jorquera over a period of three or four years. During that time, Martelo had seen appellant only twice: once at a funeral and later at Taco Bell during the Ecstasy sample exchange.
After hearing the proffered testimony, the court sustained the state's relevancy objection and denied the severance motion as moot. The court determined that any prior drug activities between Martelo and Jorquera were irrelevant. It further ruled that any prior drug activities between Martelo and Cannon were not proper subjects of cross-examination. Noting appellant's objection, the court stated:
The ability to cross-examine does not preclude the court's ability to determine what's relevant and what is not relevant. And the court does not find the evidence that you're trying to bring up by way of prior dealings to be relevant to the proceedings. What Mr. Eliakim is being accused of has nothing to do with the prior relationship of Ms. Jorquera and Ms. Martelo or Ms. Martelo and this gentlemen by the name of Jason.
A trial judge has broad discretion in determining limitations to be placed on cross-examination. Geralds v. State, 674 So.2d 96(Fla), (1996); Jones v. State, 580 So.2d 143 (Fla.1991). Although wide latitude is permitted on cross-examination in a criminal trial, a determination as to the scope of cross-examination lies within the sound discretion of the trial court. White v. State, 817 So.2d 799 (Fla.2002)(citing Ray v. State, 755 So.2d 604, 610 (Fla.2000) and Chandler v. State, 702 So.2d 186 (Fla.1997)). A decision to admit or exclude evidence will not be overturned absent a showing of an abuse of discretion. Traina v. State, 657 So.2d 1227 (Fla. 4th DCA 1995)(citing Rivera v. State, 561 So.2d 536, 540 (Fla.1990) and State v. Ayala, 604 So.2d 1275, 1276 (Fla. 4th DCA 1992)). "Discretion is abused only when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court." Id. (citing Trease v. State, 768 So.2d 1050, 1053 n. 2 (Fla.2000)).
Appellant argues that evidence of previous joint criminal activity between Martelo and Jorquera, which did not include him, would have supported his defense theory that the two women committed the present drug offense without him. Defense counsel asserted below that this evidence was admissible to "establish that Ms. Jorquera is a drug dealer and my client is an innocent bystander." The trial court properly rejected this argument. Evidence of the co-defendants' drug dealing history was inadmissible under sections 90.404(1) and (2), Florida Statutes. See Espinosa v. State, 589 So.2d 887 (Fla.1991)(holding that in murder prosecution evidence of the co-defendant's violent history to place blame on him was inadmissible as both bad character or trait evidence and as similar fact evidence since it was offered solely to prove the co-defendant's bad character or propensity).
Generally, any evidence relevant to prove a material fact at issue is admissible unless precluded by a specific rule of exclusion. Section 90.404, Florida Statutes, is the evidentiary rule of exclusion pertinent to appellant's proffer. In this case, if appellant sought to introduce evidence that Jorquera was a drug dealer to prove that she, and not he, was Martelo's sole supplier, then this evidence was clearly inadmissible under section 90.404(1), Florida Statutes. That section states that "[e]vidence of a person's character or a trait of his character is inadmissible to prove that he acted in conformity with it on a particular *61 occasion." The exceptions listed in subsections (a), (b), and (c) do not apply here.
If appellant intended to present this evidence as similar fact evidence of other crimes, wrongs, or acts to prove that the two women followed their usual inclination to engage in drug exchanges together, then the evidence was inadmissible under section 90.404(2)(a), Florida Statutes, which codifies the Williams Rule.[1] This rule provides that:
Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
Here, appellant failed to demonstrate how evidence of the co-defendants' previous joint criminal activity was probative as to any of the issues enumerated in section 90.404(2). When questioned by the trial judge about its relevancy, appellant simply stated the evidence was "completely relevant to show their complicity in drug dealing." Clearly, this evidence would have served solely to demonstrate the co-defendants' propensity to engage in drug deals together.
In State v. Savino, 567 So.2d 892 (Fla. 1990), the supreme court stated that the test for admissibility of "reverse" Williams Rule evidence is relevancy. "If a defendant's purpose is to shift suspicion from himself to another person, evidence of past criminal conduct of that other person should be of such nature that it would be admissible if that person were on trial for the present offense." Id. at 894. The court added that "[e]vidence of bad character or propensity to commit a crime by another would not be admitted; such evidence should benefit a criminal defendant no more than it should benefit the state." Id.
Here, appellant's purpose was to shift suspicion from himself as the source of the drugs to Jorquera and establish his status as an innocent bystander. However, evidence of Jorquera's prior drug dealings with Martelo failed to meet Savino's test for reverse Williams rule evidence. Such evidence would not have been admissible had Jorquera been on trial alone. For, other than proving Jorquera's propensity to engage in drug sales with Martelo, it lacked any logical tendency to prove or disprove a material fact in issue. Appellant was unable to demonstrate how this evidence bore on any issue material to whether he participated in this drug transaction or how it cast reasonable doubt on his own guilt. See Rivera v. State, 561 So.2d 536, 539 (Fla.1990)(acknowledging that "where evidence tends in any way, even indirectly, to establish a reasonable doubt of a defendant's guilt, it is error to deny its admission," but adding that the admissibility of reverse Williams Rule evidence "must be gauged by the same principle of relevancy as any other evidence offered by the defendant"). Moreover, this "similar crimes" evidence was too general in nature and devoid of "a close similarity of facts, a unique or `fingerprint' type of information" for the evidence to satisfy Savino's relevancy requirement. 567 So.2d at 894.
We can find no abuse of discretion in the exclusion of this collateral crime evidence. See White, 817 So.2d at 799 (finding no abuse of discretion in the trial court's limiting the admission of collateral evidence concerning the factual details underlying the co-defendant's unrelated murder conviction); *62 Jones, 580 So.2d at 145 (holding that evidence regarding witnesses' convictions for drug-related offenses and violence against police did not meet test for reverse Williams Rule evidence); Rivera, 561 So.2d at 540 (holding that trial court did not abuse its discretion in excluding proffered reverse Williams rule evidence); Traina, 657 So.2d at 1227 (holding that exclusion of reverse Williams Rule evidence was not an abuse of discretion given factual distinctions between third party's crimes and charged offense).
Appellant complains that the court unfairly restricted his cross-examination of Martelo merely to avoid prejudice to co-defendant Jorquera. On the contrary, the trial court never needed to reach the issue of prejudice to Jorquera because it determined from the outset that the evidence was irrelevant. Under section 90.403, Florida Statutes, the court is required to conduct a balancing test to determine if relevant evidence is inadmissible because outweighed by prejudice. See Savino, 567 So.2d at 894 (discussing that only after the relevance requirement is satisfied is prejudice or confusion determined).
We next address appellant's second point that the trial court erred in restricting his cross-examination of Martelo regarding her prior drug dealings with persons arrested pursuant to her substantial assistance plea agreement. Jorquera's attorney cross-examined Martelo first. He questioned her extensively about her substantial assistance plea agreement, focusing upon benefits that flowed from the agreement, such as favorable treatment on her bond and sentence in this case, as well as on subsequent criminal charges and probation violations. He also questioned her about drug deals and arrests she brought about pursuant to her plea agreement. Martelo testified that she helped law enforcement make drug arrests of two persons.
When appellant's counsel cross-examined Martelo, he questioned her about the nature of her relationship with these persons she "set up." Martelo described them as "acquaintances." When appellant's counsel attempted to delve more deeply into Martelo's prior relationship with these people and elicit evidence of any prior drug involvement between them, the state objected on relevancy grounds. Discerning appellant's strategy to compare Martelo's prior relationship with these persons to her prior drug dealings with Jorquera, the state accused counsel of attempting to circumvent the court's earlier ruling precluding evidence of Martelo's prior drug involvement with Jorquera. The court sustained the objection, but clarified that appellant could elicit the names of the persons arrested pursuant to her plea obligations, the general nature and length of her relationship with them, the circumstances of their arrests, and the charges for which they were arrested. In addition, the court ruled that appellant could elicit details regarding any benefits Martelo received from her plea agreement, including any immunity she was offered.
While a trial judge has broad discretion in determining limitations to be placed on cross-examination, great latitude should be allowed in cross-examination of an accomplice who testifies for the prosecution. See Powe v. State, 413 So.2d 1272 (Fla. 1st DCA 1982). Contrary to appellant's contention that his cross-examination of Martelo was unfairly restricted, the record demonstrates that appellant was allowed to question Martelo extensively on the pertinent details of her plea agreement and establish her motive or bias in testifying against appellant. Accordingly, we do not find that the trial court's ruling prevented effective impeachment of Martelo *63 or placed undue restriction on the development of appellant's defense.
In sum, we conclude that the trial court did not abuse its discretion in disallowing the reverse-Williams Rule evidence or in limiting the scope of appellant's cross-examination concerning the state witness's plea agreement. Moreover, considering the evidence admitted regarding appellant's active participation in the charged offenses, we find that there is no reasonable possibility that the errors complained of contributed to appellant's conviction. See Goodwin v. State, 751 So.2d 537, 541 (Fla.1999).
AFFIRMED.
GROSS, J., concurs.
FARMER, C.J., dissents with opinion.
FARMER, C.J., dissenting.
As I see it, the crucial holding of the majority goes something like this. A defendant who claims that he was merely present at the scene of a drug transaction between two other people, and that he was not a participant, should be barred as a matter of evidentiary rule from cross-examination to show that these same two people were recently involved in several other identical or similar transactions. The rationale for excluding this evidence is that such cross-examination shares the unique dangers of unreliability ordinarily attributed to traditional propensity evidence. With respect, the standard of review used to reach that conclusion, as well as the analysis, appear to me unjustifiable. I think the evidence should have been admitted.
In concluding that the trial judge properly barred the cross-examination, the majority defers to the trial judge under the standard of review known as "abuse of discretion." To be sure, there are any number of supreme court holdings that abuse of discretion is the proper standard. See, e.g., White v. State, 817 So.2d 799 (Fla.2002) ("[the a]dmission of evidence is within the discretion of the trial court and will not be reversed unless there has been a clear abuse of that discretion."). In fact over the years the supreme court has almost routinelyi.e., usually without explanationused some variation of this formulation as the evidence standard of review. See also Zack v. State, 753 So.2d 9, 16 (Fla.2000) ("A trial court has broad discretion in determining the relevance of evidence and such a determination will not be disturbed absent an abuse of discretion."); Kormondy v. State, 845 So.2d 41, 52 (Fla. 2003) ("Limitations on the examination of a particular witness are controlled in the sound discretion of the trial court, and the trial court's ruling in this area will only be reversed if the aggrieved party demonstrates an abuse of that discretion."); Anderson v. State, 841 So.2d 390, 401 (Fla. 2003) ("Absent a clear showing of abuse of discretion by the trial court, a ruling on admissibility of such evidence will not be disturbed.").
With complete respect for the supreme court, I should like to suggest the possibility that the court may have erred in adopting abuse of discretion as the primary or only standard of review for evidence decisions. For I have come to believe that the standard of review for rulings on evidence ought to be primarily de novo or, under certain circumstances, a mixture of de novo and abuse of discretion. This conclusion emerges from a consideration of the unique role of evidence and is explained in the following paragraphs.
The law of evidence regulates the flow of "knowledge" to the finder of fact. It is predicated on the recognition that fact-finding in courts requires some limitation on what should be submitted as "facts" to judges and juries. Some information may *64 be unlikely to advance the search for truth; some truthful information may waste the time and attention of the fact-finder or deflect the consideration of the final outcome; some truthful information may unduly slant the outcome for or against a party. The recognition of the need to have some limits on the information given to fact-finders thus proceeds on the basis that such information must be reliable to the mission of truth seeking and pertinent to the inquiry. To that end, Judges struggled over the centuries to devise provisions to assure that the information, if believed and accepted, would be reasonably likely to yield the truth and a reliable outcome. Over time, these provisions came to be referred to as "rules" of evidence.
More recently these judge-made "rules" were adopted into bodies of evidence law, e.g., Federal Rules of Evidence, or even codified into statutory law, e.g., the Florida Evidence Code. See Ch. 76-237, Laws of Fla.[2] In adopting the Florida Evidence Code "to the extent that it is procedural" the supreme court said:
"It is generally recognized that the present rules of evidence are derived from multiple sources, specifically, case opinions of this Court, the rules of this Court, and statutes enacted by the legislature. Rules of evidence may in some instances be substantive law and, therefore, the sole responsibility of the legislature. In other instances, evidentiary rules may be procedural and the responsibility of this Court."
In re Florida Evidence Code, 372 So.2d 1369, 1369 (Fla.1979). In short, the court understood that it was adopting rules of evidence, not suggestions for the exercise of discretion.
Truth be told, the Florida Evidence Code, like its federal counterpart, frames many of its rules as "general principles and `standards' rather than inflexible rules of law." Margaret A. Berger, The Federal Rules of Evidence: Defining and Refining the Goals of Codification, 12 HOFSTRA L.REV. 255 (1984). Yet any generality in these rules does not make them any less rule-like or introduce an indeterminacy of the kind normally associated with trial court discretion.[3] Thus whether one thinks of evidence provisions as "rules" or instead as "principles" or "standards", the effect is the same. They are intended to operate very much like rules to specify what information may be given to juridical fact finders to ensure general reliability of outcome. The fact-finder will be able to *65 discern the truth and arrive at an outcome in which all can have confidence.
The rules of evidence thus specify what constitutes the knowledge on which we predicate all decision making within the judicial system. They are intended to be applied universally within the judicial system unless different rules are specifically established for particular tribunals or subjects. If they are the rules of knowledge, these rules should not be different from case to case, or Judge to Judge, or Court to Courtas they are under the notion that these are discretionary rulings. Rules of knowledge for the judicial system should not be idiosyncratic. They are either universal, or they should not be used as rules of knowledge.
In a great sense, all knowledge is like scientific evidence because science is but one branch of knowledge. Yet as to review of scientific knowledge decisions by trial judges, the supreme court has recognized the fault inherent in the abuse of discretion standard:
"We find that the abuse-of-discretion standard is incorrect.
"There are good reasons why the determination of general acceptance in the scientific community should not be left to the discretion of the trial court. Foremost is the fact that the general acceptance issue transcends any particular dispute. As one court put it, `[t]he question of general acceptance of a scientific technique, while referring to only one of the criteria for admissibility of expert testimony, in another sense transcends that particular inquiry, for, in attempting to establish such general acceptance for purposes of the case at hand, the proponent will also be asking the court to establish the law of the jurisdiction for future cases.'
"Application of less than a de novo standard of review to an issue which transcends individual cases invariably leads to inconsistent treatment of similarly situated claims." [e.s.]
Brim v. State, 695 So.2d 268, 274 (Fla. 1997).
Except for limited arease.g., individual prejudice outweighing the importance of relevant evidenceany decision on a rule of evidence as to what is permissible knowledge in the legal system "transcends any particular dispute." Rules of knowledge are universal or they are not "rules" of knowledge. Treating the admission of evidence, universally or even primarily, as subject to the individual discretion of trial judges serves only to make the flow of knowledge subject to the personal philosophies and experience of differing trial judges, without the possibility of correction in the appellate system. That in turn means that permissible knowledge within the judicial system may differ from courtroom to courtroom, from courthouse to courthouse. There are many things about the law that should be determinate and thus predictable, so that people may order their affairs and make decisions about the commitments of families and businesses and their resources. But few of these necessarily determinate aspects of the legal system are more fundamental than the basis for the very knowledge that the system will act upon.
Many of the rules of evidence on their face demonstrate the universality of epistemological prescriptions in the search for reliable and trustworthy knowledge. See, e.g., § 90.402 ("All relevant evidence is admissible, except as provided by law."); § 90.802 (except as provided by statute hearsay is categorically inadmissible); § 90.901 (authentication or identification required). Indeed it is with an appropriate regard for the universality of evidence rules that the supreme court has itself recognized that any discretion in the admission *66 or exclusion of evidence must be assessed for compliance with the Florida Evidence Code. Johnston v. State, 863 So.2d 271, 278 (Fla.2003) ("The trial court's discretion is limited by the rules of evidence."); see also Sybers v. State, 841 So.2d 532, 545 (Fla. 1st DCA 2003) ("However, when ruling on evidentiary matters, `a trial court's discretion is limited by the rules of evidence'."); Nardone v. State, 798 So.2d 870, 874 (Fla. 4th DCA 2001) ("The standard of review for admissibility of evidence is abuse of discretion. However, a trial court's discretion is limited by the rules of evidence. [c.o.]"); Taylor v. State, 601 So.2d 1304 (Fla. 4th DCA 1992) ("[T]he trial court's discretion here was narrowly limited by the rules of evidence."). If discretion is "limited" by the rules of evidence, is there really any discretion to refuse evidence that is allowed by one of the rules? If not, why continue with the standard of review as abuse of discretion?
A trial court might be said to have a kind of discretion in deciding whether proposed evidence fits within specified factual requirements for admission or falls within some exception to a general rule. For example, a court may have discretion in deciding whether a specific declaration factually qualifies as an excited utterance. Yet if the court finds the out-of-court declaration to be an excited utterance, there is no discretion to exclude it if it is relevant. For this exception to the hearsay rule, the court's decision might be subject to review under a mixed standard of de novo and abuse of discretion.[4]
Another example of limited and specific discretion in the admission or exclusion of evidence is found in section 90.403, which provides:
"Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence."
At least initially, the trial judge has discretion here. But, even still, it is not an unlimited discretionas the adjectives and adverbs attest. And in any case, the issue as to when prejudice from relevant evidence becomes "unfair" ought to be circumscribed by principles and standards built up by appellate decisions, rather than confined to the individualized concerns of every trial judge:
"the fact that `the [trial] court's discretion is equitable in nature ... hardly means that it is unfettered by meaningful standards or shielded from thorough appellate review.' In some instances the need for uniformity and predictability demand thorough appellate review.... An appellate court must carefully scrutinize the nature of the trial court's determination and decide whether that court's superior opportunities of observation or other reasons of policy require greater *67 deference than would be accorded to its formulations of law or its application of law to the facts. In cases within the former categories, `abuse of discretion' should be given a broad reading, in others a reading which scarcely differs from the definition of error. Above all, an appellate court should consider whether the lawmaker intended that discretion should be committed solely to the trial judge or to judges throughout the judicial system." [e.s.]
Henry J. Friendly, Indiscretion About Discretion, 31 EMORY L.J. 747, 783-84 (1982).
There is not a single word in the Florida Evidence Code intimating that the Legislature "intended that discretion [in the admission or exclusion of evidence] should be committed solely to the trial judge." There is, however, a clause in our state constitution creating a right to appellate review. Art. V, § 4(b), Fla. Const. ("District courts of appeal shall have jurisdiction to hear appeals, that may be taken as a matter of right, from final judgments or orders of trial courts, including those entered on review of administrative action, not directly appealable to the supreme court or a circuit court. [e.s.]"); see Amendments to Fla.R.App.P., 696 So.2d 1103, 1104 (Fla.1996) ("the language of article V, section 4(b), [is] a constitutional protection of the right to appeal. However, we believe that the legislature may implement this constitutional right and place reasonable conditions upon it so long as they do not thwart the litigants' legitimate appellate rights." [e.s.]).
Defenders of the system of broad appellate deference to individualized decisions on evidence should confront the question whether this standard of review has a tendency to "thwart the litigants' legitimate appellate rights." 696 So.2d at 1104. Many cases turn directly on some specific piece of evidence admitted or excluded. If there are good reasons for admitting or excluding a piece of evidence, the reasons should be equally good in most, even if not all, cases having the same or similar circumstances. This thought undoubtedly lay behind the supreme court's own determination that ("[W]here evidence tends in any way, even indirectly, to establish a reasonable doubt of defendant's guilt, it is error to deny its admission." [e.s.]). Rivera v. State, 561 So.2d 536, 539 (Fla.1990). I therefore believe that it is time for the supreme court to rethink its formulation of the sole standard of review for the admission or exclusion of evidence.
It is time to retreat from the notion of broad discretion in trial judges and to adopt a standard recognizing that most evidence decisions express a system-wide application as to what is permissible evidence in our courtrooms. In doing so, the court should also consider why it believes that it is better for most evidence applications to be developed by trial judges without meaningful resort to the additional resources and differing perspectives that appellate judges may bring:
"[T]here are structural reasons for preferring appellate court decisions as a general rule.... Not only are counsel in a position to present more refined issues, but the appellate court itself has more time and resources for research and discussion. Also of considerable significance is the collegial and pluralistic nature of the appellate court. . . . [T]he discussion and debate among judges which attends the creation of an appellate opinion illuminates the relevant issues such that the panel's collective decision is often superior to what would have been the product of any single panel member.... [T]he challenge of thoughtful debate is perhaps *68 the best test for the soundness of legal rules."
Hurtado v. Statewide Home Loan Co., 167 Cal.App.3d 1019, 1024, 213 Cal.Rptr. 712 (Cal.App.1985). I suggest that this case, on this issue, presents an appropriate occasion for the court to take up these issues.
I now turn to an analysis of the exclusion of the evidence in the present case. I begin by observing that a defendant has a very strong interest in showing bias and that the witnesses in the case against him are untruthful. Defense counsel's essential role in most criminal trials is to chip away at the state's case by building reasonable doubts in the chain of evidence. And so I challenge the conclusion that under the Evidence Code a defendant cannot be allowed to add to that doubt by producing evidence that two co-defendants recently committed a number of similar crimes and were therefore more likely to have done the crime on trial.
Reading section 90.404(2) to categorically exclude such defensive Williams rule evidence is to wrench the rule from its purposive mooringsnamely, that it would be a denial of due process to convict a defendant of a specific crime charged merely because he is thought generally likely to commit such sins. The statute is founded on the premise that, if the evidence does more than show mere propensity, if it actually tends to show that someone else did the crime on trial, then there is no danger of convicting someone because of mere propensity. Yet the majority's categorical reading is to interpret the unmoored rule's text with a literalism illsuited to its purpose.
The statutory text in question says:
"Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity."
§ 90.404(2)(a), Fla. Stat. (2003). The drafters of this rule explained that their purpose was:
"to closely paraphrase the language used in Williams v. State, 110 So.2d 654, 663 (Fla.1939) [sic  1959?]. There the court, in finding admissible evidence relating to the commission by the defendant of another crime, stated:
`Evidence of any facts relevant to a material fact in issue except where the sole relevancy is character or propensity of the accused is admissible unless precluded by some specific exception or rule of exclusion. This rule we hold applies to relevant similar fact evidence ... even though it points to the commission of another crime'." [e.s.]
Fla. Stat. Ann. § 90.404, Law Revision Council Note (West 1976).
A further explanation from Williams itself adds the following:
"Let us begin with a reminder that we here deal with so-called similar fact evidence which tends to reveal the commission of a collateral crime. Our initial premise is the general canon of evidence that any fact relevant to prove a fact in issue is admissible into evidence unless its admissibility is precluded by some specific rule of exclusion. Viewing the problem at hand from this perspective, we begin by thinking in terms of a rule of admissibility as contrasted to a rule of exclusion." [e.o.]
Williams v. State, 110 So.2d 654, 658 (Fla. 1959). Paradoxically, the method in this case seems to be the converse of Williams: the initial premise is to ignore the general canon of admissibility of all relevant evidence *69 and then to search for a rule of exclusion.
As the Williams court also showed, the first question in regard to the admissibility of this evidence is to ask whether it is relevant to a fact in issue. Here it surely is relevant to the defense that the co-defendants themselves perpetrated the crime, that defendant was by circumstances placed unsuspectingly at the scene. Proof that the co-defendants have committed several recent identical drug transactions places this evidence well outside of propensity and clearly within relevancy to the defense that the other persons at the scene were the only participants in the crime.
Espinosa v. State, 589 So.2d 887 (Fla. 1991), is irrelevant to the circumstances sought to be established through cross-examination in this case. The evidence to be admitted there was that a co-defendant had a general "long history" of violent behavior before coming to America. Is this not openly and unabashedly propensity evidence, without any conceivable tendency to tie the co-defendant to the specific crime in question? In contrast, the evidence offered in the present case is that the two other persons had committed the same crime on several recent occasions. Why wouldn't this fact if true tend to make defendant's claim of mere presence more likely true?
I do not overlook the supreme court's decision in State v. Savino, 567 So.2d 892 (Fla.1990). I do however focus on the specifics of the case. There defendant sought to show the mother's guilt for the death of the child by offering "the wife's alleged abuse of a one-month-old child, in a different state, in a different marriage, and in a different manner...." 567 So.2d at 894. The trial judge excluded the evidence. As the supreme court explained:
"If a defendant's purpose is to shift suspicion from himself to another person, evidence of past criminal conduct of that other person should be of such nature that it would be admissible if that person were on trial for the present offense. Evidence of bad character or propensity to commit a crime by another would not be admitted; such evidence should benefit a criminal defendant no more than it should benefit the state."
567 So.2d at 894. Later the court said:
"Section 90.402, Florida Statutes (1987), provides that all relevant evidence is admissible except as provided by law. Section 90.403, Florida Statutes (1987), however, provides that relevant evidence is inadmissible when outweighed by prejudice, confusion of issues, misleading the jury, or presenting of cumulative evidence. One does not reach prejudice until relevancy is established; to be relevant similar-fact evidence of other crimes must be of such nature that it would tend to prove a material fact in issue. Thus, we disagree that the degree of similarity for such crimes to be relevant should be modified when identity is sought to be proved, even though it is less likely that prejudice would occur when evidence of other crimes is sought to be introduced by a defendant. Only after the relevance requirement is satisfied is prejudice or confusion determined."
567 So.2d at 894.
An essential aspect of the supreme court's review of Savino was its holding that it is not any easier for a defendant to make use of exculpatory Williams rule evidence than it is for the State to make use of inculpatory Williams rule evidence.[5] *70 Yet the majority inexplicably converts that into a holding in this case that it should be harder for a defendant to use Williams rule evidence for exoneration than for the state to convict. I think that conclusion conflicts with the supreme court's Rivera decision that ("where evidence tends in any way, even indirectly, to establish a reasonable doubt of defendant's guilt, it is error to deny its admission." [e.s.]). 561 So.2d at 539.
Properly understood, Savino does not really purport to bar all similar crimes evidence adduced by a defendant to show that co-defendants actually committed the crime. It actually stands only for a narrower proposition: that evidence of a single, seven-years earlier, event with some similarities to the crime on trial is not sufficient to pass beyond mere propensity and tend to prove that she was more likely to have been the one who killed the later child.
The present case, unlike Savino, involves several recent identical drug transactions between the same two people. The quality of the evidence proffered in the current case thus moves beyond simple propensity and partakes of that essential ingredient of all relevant evidencenamely, a capacity "tending to prove or disprove a material fact." § 90.401, Fla. Stat. (2003). The court reads section 90.404 as if it were unhinged from its purpose. The reading is well outside the specific holding in Savino that defensive Williams rule evidence is barred only when it shows mere propensity but, as with the state's use to prove guilt, is admissible when relevant to prove a fact in issue. I conclude that the evidence proffered here was "of such nature that it would be admissible if that person were on trial for the present offense." 567 So.2d at 894.
I would reverse for a new trial.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.1959).
[2] Now codified at Ch. 90, Fla. Stat. (2003).
[3] "See H.L.A. Hart, THE CONCEPT OF LAW 121-32 (1961). As Professor Hart points out in his chapter on Formalism and Rule Scepticism:

"[C]ourts deciding a later case may reach an opposite decision to that in a precedent by narrowing the rule extracted from the precedent, and admitting some exception to it not before considered, or, if considered, left open. This process of `distinguishing' the earlier case involves finding some legally relevant difference between it and the present case, and the class of such differences can never be exhaustively determined. On the other hand, in following an earlier precedent the courts may discard a restriction found in the rule as formulated from the earlier case, on the ground that it is not required by any rule established by statute or earlier precedent. To do this is to widen the rule. Notwithstanding these two forms of legislative activity, left open by the binding force of precedent, the result of the English system of precedent has been to produce, by its use, a body of rules of which a vast number, of both major and minor importance, are as determinate as any statutory rule. They can now only be altered by statute, as the courts themselves often declare in cases where the `merits' seem to run counter to the requirements of the established precedents."
Concept of Law, at 131-32.
[4] Personally I think it is incorrect to characterize judicial fact finding as "discretionary" in nature. Whether to believe a witness as to a foundation fact necessary for the admission of certain testimony may be up to the judge, but that is a credibility determination rather than an act of true discretion. See BOUVIER'S LAW DICTIONARY 804 (8th ed.1914) ("discretion" is "[t]he power exercised by courts to determine questions to which no strict rule of law is applicable but which, from their nature, and the circumstances of the case, are controlled by the personal judgment of the court."); and see Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980) ("Judicial discretion is defined as: `The power exercised by courts to determine questions to which no strict rule of law is applicable but which, from their nature, and the circumstances of the case, are controlled by the personal judgment of the court.' 1 Bouvier's Law Dictionary and Concise Encyclopedia 804 (8th ed.1914).").
[5] I would not be candid if I implied that I thought this part of the court's holding in Savino was correct. Frankly, I doubt that it is. The due process dangers of using propensity evidence to convict a defendant because he "is the kind of person who commits such crimes" are all but nonexistent when a defendant seeks to use such evidence to exonerate himself by proof that other persons at the scene have recently committed a string of such crimes. The effect of this evidence is not to convict anyone but to acquit the not guilty. There is no good reason to read the rule in this regard as the court did in Savino.