LEVINE, J.
 

 The appellant appeals his conviction for first-degree murder and his sentence of life in prison. We find the trial court did not abuse its discretion in the issues presented for this court’s review. We affirm the conviction and sentence imposed.
 

 The appellant and the victim, Annette Arteaga, were in a relationship that subsequently ended. Later, the victim obtained a restraining order against the appellant. The appellant allegedly violated the restraining order on several occasions, including by coming near the victim when she was a student at Atlantic Vocational Technical Institute. The victim even made special arrangements to be escorted to and from class and to park in a staff parking lot so that she would be closer to the buildings.
 

 The day before the victim was killed, a witness, Luis Matos, saw the appellant near Atlantic Vocational Technical Institute. When asked what he was doing, the appellant responded that he was “waiting for a girl.” The appellant left after staying forty-five minutes to an hour. The next day the appellant returned to the same area, and the same witness again approached the appellant, who again said he was “waiting for a girl.” This time the witness said the appellant looked “angry,” and the witness saw the “butt” of a gun on the appellant. Five minutes after the appellant left, Matos heard two gunshots and a scream.
 

 The same day Matos heard the gunshots, another witness, Yerlyne Saintus, saw the appellant and victim standing close to each other. Saintus heard a noise “like a tire exploded” and then saw the victim lying on the ground with the appellant hovering over her. After hearing a second noise, the witness said, “Oh my God,” and the appellant looked up at the witness and ran away. Saintus was later able to identify the appellant from a photo lineup.
 

 The victim died as a result of a gunshot wound to her abdomen. The appellant was apprehended and gave two statements to law enforcement. In both statements, after being informed of his
 
 Miranda
 
 rights, the appellant admitted purchasing the gun a week before the shooting, loading the gun, going to Atlantic Vocational Technical Institute, approaching the victim, asking the victim to drop pending charges against him, and finally shooting her when she refused to drop the charges.
 

 At trial, the appellant’s testimony was significantly different. He testified that he went to see the victim so she could return his personal belongings. The appellant went with an acquaintance, Cesar Rodriguez, who said he would get the belongings from the victim. According to the appellant, Cesar pulled a gun and then the appellant saw Cesar shoot the victim.
 

 The appellant testified that he did not tell police about Cesar in the two prior
 
 *92
 
 interviews with law enforcement because Cesar had threatened him and his family. The appellant stated further that he decided to testify about Cesar’s involvement in the victim’s murder since “many people there, out there, already knew that it had been him.” The appellant stated that he realized that it was common knowledge when Cesar “shouted it” to the victim’s uncle. Defense counsel then asked appellant whether he became aware of a subsequent shooting involving Cesar and the victim’s uncle. The trial court sustained the state’s objection. The trial court, however, allowed another witness to testify, over the state’s objection, that in 2004, two years after the victim was shot, he witnessed Cesar fire twelve or thirteen shots at the victim’s uncle.
 

 Related to the issue of the alleged involvement of Cesar, during cross-examination, the appellant sought to show an alleged photo of Cesar to witnesses Matos, Saintus, and Detective Ilarraza to establish physical similarities between the appellant and Cesar. The state objected on the ground that the photograph purported to be of Cesar was not authenticated. The court sustained the state’s objection, subject to the defense bringing in a witness to authenticate the photo. The court did not permit cross-examination regarding any alleged physical similarities.
 

 The jury found the appellant guilty as charged. From his conviction and life sentence, the appellant appeals.
 

 The appellant claims that the trial court abused its discretion by not allowing the appellant to testify as to Cesar’s purported admission of the killing to the victim’s uncle. “A trial judge’s decision to exclude evidence is reviewed for abuse of discretion.”
 
 Scott v. State,
 
 17 So.3d 766, 768 (Fla. 4th DCA 2009).
 

 On appeal, appellant asserts that his knowledge of Cesar shooting the victim’s uncle was relevant to show appellant’s “state of mind” and the reasonableness of his fear of Cesar. We find the trial court did not abuse its discretion by excluding the testimony of the appellant regarding the allegation that Cesar purportedly shot the victim’s uncle two years after the shooting of the victim.
 

 “It is well settled that the state-of-mind exception to the hearsay rule allows the admission of extra-judicial statements only if the declarant’s state of mind is at issue in a particular case or to prove or explain the declarant’s subsequent conduct.”
 
 Rigdon v. State,
 
 621 So.2d 475, 479 (Fla. 4th DCA 1993) (citation omitted);
 
 see also Hodges v. State,
 
 595 So.2d 929, 931 (Fla.1992),
 
 vacated on other grounds,
 
 506 U.S. 803, 113 S.Ct. 33, 121 L.Ed.2d 6 (1992). In
 
 Rigdon,
 
 the court held that the victim’s out-of-court statement, that she felt threatened by the defendant, was inadmissible since her “state of mind was not at issue and her statements could not be used to prove appellant’s state of mind.” 621 So.2d at 479. Statements made by Cesar, while allegedly shooting the victim’s uncle in 2004, would hardly be relevant to the appellant’s state of mind at the time of the victim’s murder in 2002.
 

 We also find that the trial court did not abuse its discretion by preventing the appellant from cross-examining witnesses Matos, Saintus, and Ilarraza regarding a photograph purportedly of Cesar, and the alleged physical similarities between the appellant and Cesar.
 

 The decision to admit or exclude evidence, as well as the admission of eyewitness identification evidence, is reviewed by this court for abuse of discretion.
 
 Diaz v. State,
 
 961 So.2d 381, 382 (Fla. 4th DCA 2007);
 
 Eliakim v. State,
 
 884 So.2d 57, 60 (Fla. 4th DCA 2004).
 

 In this case, both witnesses Saintus and Ilarraza testified that the photograph of
 
 *93
 
 Cesar did not resemble the appellant. The appellant did not proffer the photograph to witness Matos, so we do not know what his testimony would have been.
 
 See Diaz,
 
 961 So.2d at 382 (without knowing the witness’s response to a photograph, an appellate court cannot evaluate the trial court’s refusal to show the victim a photograph for identification purposes). Thus, the trial court did not abuse its discretion.
 

 In summary, we find that the trial court did not abuse its discretion by limiting the appellant’s hearsay testimony or by limiting the cross-examination of witnesses by utilizing an unauthenticated photograph purportedly of “Cesar.” We thus affirm the appellant’s conviction and sentence.
 

 Affirmed.
 

 FARMER and DAMOORGIAN, JJ., concur.