DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RODNEY L. RAGIN,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D12-4477

[February 24, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Andrew L. Siegel, Judge; L.T. Case No. 11-2731 CF10A.

Daniel Tibbitt of the Law Offices of Andrew Rier, Miami, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Mark J. Hamel, Assistant Attorney General, West Palm Beach, for appellee.

CONNER, J.

Ragin appeals after a jury found him guilty of possession of cannabis with intent to sell. Ragin challenges a trial court's ruling precluding him from questioning witnesses about, and discussing in closing argument, the fact that half of the currency seized from him at the time of his arrest was returned to him two weeks later as part of a settlement of a civil forfeiture claim with the arresting agency. We agree that the trial court erred in preventing Ragin from introducing evidence and arguing about the agreement as a defense, and reverse for a new trial.

*Factual Background and Trial Court Proceedings*

Ragin was arrested and proceeded to trial on charges of possession of cannabis with intent to sell, possession of cocaine, and possession of MDMA.[1]

---

[1] "MDMA" is the shortened name for methylenedioxymethamphetamine, also associated with the name "ecstasy." *Eliakim v. State*, 884 So. 2d 57, 58 (Fla. 4th DCA 2004).

At trial, the State presented evidence that two officers from the City of Pembroke Pines Police Department were conducting a "park and walk" outside of a night club around 1:00 a.m., when they saw Ragin exit his vehicle. Ragin was the sole occupant of the vehicle, and the officers smelled the odor of marijuana emanating from both Ragin and the vehicle.

When one of the officers told Ragin that he smelled cannabis, Ragin stated "yeah I know. I got a couple joints in here." The officer saw a "treezwrap"[2] package in Ragin's hand. When Ragin handed it over, the officer found three cannabis cigarettes inside. Ragin was arrested at that point. The officers conducted a pat-down search and found another cannabis cigarette in Ragin's top left pocket. After Ragin was handcuffed, the officers found eight more bags of cannabis in Ragin's pockets, along with bundles of U.S. currency. Ragin was cooperative and admitted all the cannabis was his. A search of Ragin's car, pursuant to his arrest, revealed ammunition. The ammunition prompted the officers to search the seat in the patrol car where Ragin had been sitting. The officers then found MDMA and cocaine. Ragin was arrested for possession of those drugs as well.

At trial, one of the officers testified that the currency they found on Ragin was bundled into four "quick count bundles," meaning that it was pre-strapped for quick access. The bundles were in various amounts and denominations, totaling $1,878. The officer testified, based on his training and experience, that this type of bundling indicated to him "[s]treet level narcotics sales."

Although not part of the evidence presented to the jury, the currency that was seized from Ragin on the night of his arrest became part of a civil forfeiture proceeding by the City of Pembroke Pines Police Department. Approximately two weeks after Ragin's arrest, a captain of the department proposed a deal that the department settle the forfeiture action by giving Ragin half of the cash back. Ragin agreed and signed a document to that effect, but did not receive a copy of the document from the department. One half of the cash was returned to Ragin shortly after he signed the agreement.[3]

---

[2] In response to a juror question, the detective described "treezwrap" as "a tobacco wrapper that you can place either tobacco or cannabis inside of."

[3] During a bench conference, the State raised a discovery violation that the settlement document was not disclosed prior to trial. The trial court expressed concern as to why the defense did not mention the forfeiture proceeding prior to

On the morning of trial, but after the jury was selected, Ragin's attorney informed the trial court that he handed new discovery to the State. After the trial court inquired into the nature of the new discovery, counsel explained that currency was found on Ragin's person when he was arrested and was seized by the police department, and he wished to bring a witness into court to testify that the police officers eventually returned half of the money to Ragin, pursuant to an agreement between Ragin and the police department. Counsel also wished to introduce a form, signed by both Ragin and the police captain, memorializing the agreement. The trial court stated that it would not continue the case for Ragin to obtain such a witness, and it would not allow the admission of the settlement agreement as evidence at trial.

During defense counsel's cross-examination of one of the arresting officers, the officer was asked about notices of seizure of currency during an arrest, and the trial court allowed into evidence, over the State's objection, the notice of seizure form signed by Ragin. The cross-examination disclosed to the jury that the notice of seizure is used by the police department for a civil process to obtain the money seized. The officer explained that one of the functions of the notice is to document why the currency was not being returned to a person upon release from jail, in addition to putting the arrestee on notice that the police department would be pursuing a civil process to obtain the money.

When the officer was asked if he brought the currency that he seized from Ragin to court, the State objected, and the trial court sustained the objection. When the same question was asked of the other officer at the scene, another State objection was sustained by the trial court. The other officer testified on cross-examination, though, that he knew Ragin worked as a barber.[4]

Prior to closing arguments, the issue regarding the currency, and whether defense counsel could discuss the fact that the State and the officers did not bring the currency to court, was addressed:

> [STATE]: Okay. I don't know if it will be an issue. You've already ruled that we can't talk about the fact that the money

---

trial; however, the discovery violation issue was never addressed by the trial court.

[4] The defense implied during closing argument that the currency Ragin possessed was related to his job as a barber.

wasn't introduced into evidence. I just want to make sure that defense counsel doesn't say you didn't see the money here today. Anything of that nature. As advised by the pre-trial ruling.

THE COURT: The ruling was he can talk about the money, but he can't talk about the fact that the money is not here because it was forfeited. So he is going to be able to ask questions about the money. He asked questions about the money and I specifically allowed counsel to ask questions about the money. But he is not going to be able to say where is the money[?] Show me the money.

As part of his argument on the issue, defense counsel asked that he at least be allowed to make an issue of why the portion of the money the police department kept under the settlement agreement was not admitted as evidence. The trial court denied the request.

Ragin did not testify at trial. After deliberating, the jury returned a verdict finding Ragin guilty of possession of cannabis with the intent to sell, and not guilty of possession of cocaine and possession of MDMA. Ragin gave notice of appeal.

*Appellate Analysis*

On appeal, Ragin argues that the trial court erred in preventing him from fully cross-examining the officers regarding the seizure of currency and subsequent deal to return half of the currency, and in preventing him from arguing that the State's failure to produce the currency at trial was a lack of evidence giving rise to reasonable doubt. "The standard of review for admissibility of evidence is abuse of discretion, limited by the rules of evidence." *Browne v. State*, 132 So. 3d 312, 316 (Fla. 4th DCA 2014) (internal quotation marks omitted) (quoting *Lucas v. State*, 67 So. 3d 332, 335 (Fla. 4th DCA 2011)).

The State objected to the admissibility of the evidence based on relevancy. Florida's relevancy standard is codified in section 90.401, Florida Statutes (2012), which states: "Relevant evidence is evidence tending to prove or disprove a material fact."

Ragin wanted to make the argument to the jury that the police department had the ability to seize the entire amount of currency taken from him at his arrest, if it could prove the currency was connected to illegal activity, and the fact that it was willing to return half of the currency

4

infers a weakness in the argument that the currency was used in connection with drug activity. We determine that the trial court should have allowed Ragin to question the officers about the seizure and forfeiture because a main issue in contention was whether the currency was drug-related. We also find it problematic that the trial court allowed some questioning of the witnesses regarding the notice of seizure and the civil forfeiture process, over the State's objection, but then limited Ragin's questioning to preclude him from fully exploring the issue. *See Patrick v. State*, 104 So. 3d 1046, 1057 (Fla. 2012) ("The right of a criminal defendant to cross-examine adverse witnesses is derived from the Sixth Amendment and due process right to confront one's accusers. One accused of crime therefore has an absolute right to *full and fair* cross-examination." (emphasis added and internal quotation marks omitted) (quoting *McDuffie v. State*, 970 So. 2d 312, 324 (Fla. 2007))).

The State argues that it is unknown why the deal was made between the police department and Ragin. Therefore, evidence that half of the currency was returned is irrelevant and potentially confusing. As argued below, the State contends that the agreement could have been made simply to avoid civil litigation. Ragin counters, as he did below, that the evidence supports the inference that the police department knew the evidence tying the currency to drug-related activity was weak.

The availability of alternative theories regarding the evidence does not, alone, make evidence irrelevant. Relevant evidence need not *concretely prove* a material fact, it merely must *tend to prove* a material fact. § 90.401, Flat. Stat. (2012). For that reason, we are not persuaded by the State's argument.

Likewise, the State's argument on appeal that Ragin invited the error since he participated in the agreement to receive half of the currency is unavailing. In some situations, the State's failure to maintain evidence against an accused can result in a due process violation. We do not opine that this is such a case; however, it is important to remember that preservation of evidence against the accused is a core due process concept in our criminal justice system. We likewise decline to opine that a defendant, who is in the process of acting within his or her rights to negotiate a resolution to a legal problem, is estopped from presenting evidence that may expose a reasonable doubt.

Because it was error not to admit evidence about the civil forfeiture agreement, it was also error for the trial court to prevent Ragin's attorney from arguing, in his closing argument, that failure to produce the currency was a lack of evidence indicating reasonable doubt. However, since this

5

issue is moot with our holding that the trial court erred in prohibiting evidence, we decline to discuss the closing argument issue any further.[5]

We address one final point. The State defends the trial court's actions, stating that, if Ragin presented evidence that the police department made a deal to return half of the currency, then the State would have been able to counter that Ragin also agreed to forfeit half of the currency, which indicates a consciousness of guilt on his part. However, it is not for this court to follow the domino of arguments and counter-arguments that may or may not be made if certain evidence would have been admitted. Ragin may very well make arguments at retrial to his detriment; however, it is his liberty and right to do so, and it is such liberty and right which we are charged with ensuring. *Cf. State v. Bowen*, 698 So. 2d 248, 250 (Fla. 1997) ("And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" (quoting *Faretta v. California*, 422 U.S. 806, 834 (1975))).

We therefore reverse Ragin's judgment and sentence and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*

WARNER and LEVINE, JJ., concur.

*      *      *

***Not final until disposition of timely filed motion for rehearing.***

---

[5] Without knowing how the evidence will unfold at retrial, the discussion is premature.